No. 23-1410

In the
# United States Court of Appeals
for the Tenth Circuit

LIBERTY GLOBAL, INC.,

*Plaintiff-Appellant*,

v.

UNITED STATES,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Colorado, Case No. 1:20-cv-03501-RBJ,
Hon. R. Brooke Jackson, *United States Senior District Judge*

**PLAINTIFF-APPELLANT LIBERTY GLOBAL, INC.'S REPLY BRIEF**


Jeremy Patashnik
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Gregory S. Tamkin
DORSEY & WHITNEY
1400 Wewatta St., Ste. 400
Denver, CO 80202

Shay Dvoretzky
*Counsel of Record*
Rajiv Madan
Royce Tidwell
Christopher Bowers
Nathan Wacker
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Plaintiff-Appellant Liberty Global, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iv

GLOSSARY ........ x

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 5

I. The IRS cannot rely on the economic substance doctrine to disallow LGI's § 245A deduction, because doing so would contravene the Tax Code and Treasury regulations. ........ 5

A. The economic substance doctrine is not relevant to the steps of Project Soy, so § 7701(*o*) doesn't authorize using the doctrine to deny LGI's § 245A deduction. ........ 5

1. As § 7701(*o*) and caselaw make clear, the IRS cannot use the economic substance doctrine to disregard a transaction unless the doctrine is "relevant." ........ 5

2. The economic substance doctrine can be relevant only when there is a dispute about whether the taxpayer actually has in substance what a Code provision requires. ........ 6

a. The doctrine is relevant when, for example, there's a dispute about whether the taxpayer actually has losses or debt that it claims to have, but it isn't relevant when there's no question that the taxpayer has what it claims. ........ 7

b. The doctrine isn't relevant to taxpayer choices that the Tax Code and Treasury regulations permit to be tax-motivated, like LGI's capitalization choices and Telenet Group's conversion. ........ 10

**TABLE OF CONTENTS**
(continued)

**Page**


c. The doctrine cannot be used to override a reticulated statutory or regulatory regime that prescribes specific tax consequences. ....................... 12

B. The government's counterarguments lack merit. ....................... 14

1. The government and district court nullify § 7701(*o*)'s relevance requirement. ....................................... 15

2. The government cannot use the economic substance doctrine to deny LGI's § 245A deduction, which rests on real gains and the treatment the Tax Code and Treasury regulations expressly require. ...................... 17

a. Project Soy generated real gain and real earnings and profits from providing telecommunications services in Europe, so the economic substance doctrine is thus not relevant. ......................................................................... 17

b. The economic substance doctrine cannot be used to disregard Telenet Group's conversion to a corporation and the resulting § 351 organization or LGI's capitalization choices. .......... 18

c. The economic substance doctrine doesn't permit the IRS to override the express consequences that §§ 245A, 964(e), and 1248(a) require, and the government's view of § 245A's and GILTI's purposes doesn't allow it to rewrite the statute. ............................................... 21

3. The government's forfeiture arguments fail. ..................... 24

**TABLE OF CONTENTS**
(continued)

**Page**

II. The government cannot disallow LGI's § 245A deduction under the temporary regulations because those regulations are invalid, as the district court correctly held. ....................25

A. The temporary regulations exceed Treasury's authority. ..........26

B. Treasury was required, but failed, to comply with the APA's notice-and-comment procedures before issuing the temporary regulations. ....................27

1. The APA requires notice and comment before agencies issue legislative rules. ....................27

2. Treasury didn't comply with the APA's notice-and-comment requirement. ....................28

C. The government's counterarguments lack merit. ....................28

1. Section 7805(e) does not displace the APA's notice-and-comment requirement. ....................29

2. Treasury lacked good cause to skip notice and comment. ....................30

CONCLUSION ....................33

CERTIFICATE OF COMPLIANCE ....................34

CERTIFICATE OF SERVICE ....................35

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACM Partnership v. Commissioner*,
157 F.3d 231 (3d Cir. 1998) ....................16

*Allegheny Defense Project v. Federal Energy Regulatory Commission*,
964 F.3d 1 (D.C. Cir. 2020) (en banc) .................... 26, 27

*American Electric Power Co. v. United States*,
326 F.3d 737 (6th Cir. 2003) ....................19

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ....................21

*Blum v. Commissioner*,
737 F.3d 1303 (10th Cir. 2013) ....................7

*Bohrer v. Commissioner*,
945 F.2d 344 (10th Cir. 1991) ....................7

*Coltec Industries, Inc. v. United States*,
454 F.3d 1340 (Fed. Cir. 2006) ....................19

*Cottage Savings Ass'n v. Commissioner*,
499 U.S. 554 (1991) ....................8

*Curry v. Commissioner*,
43 T.C. 667 (1965) ....................9

*Dover Corp. v. Commissioner*,
122 T.C. 324 (2004) ....................11

*East Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ....................32

*Environmental Defense Fund, Inc. v. Environmental Protection Agency*,
716 F.2d 915 (D.C. Cir. 1983) ....................32

*Frank Lyon Co. v. United States*,
435 U.S. 561 (1978) ....................7, 8

*Garland v. Cargill*,
602 U.S. 406 (2024) ....................26

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**


*Gitlitz v. Commissioner*,
531 U.S. 206 (2001) .......... 21

*Golsen v. Commissioner*,
445 F.2d 985 (10th Cir. 1971) .......... 19

*Granite Trust Co. v. United States*,
238 F.2d 670 (1st Cir. 1956) .......... 8, 9

*Gregory v. Helvering*,
293 U.S. 465 (1935) .......... 5, 7, 18, 19, 20

*Gulf Fishermens Ass'n v. National Marine Fisheries Service*,
968 F.3d 454 (5th Cir. 2020) .......... 27

*Helvering v. Gregory*,
69 F.2d 809 (2d Cir. 1934) .......... 2

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) .......... 23

*Horn v. Commissioner*,
968 F.2d 1229 (D.C. Cir. 1992) .......... 13

*Keeler v. Commissioner*,
243 F.3d 1212 (10th Cir. 2001) .......... 7

*Knetsch v. United States*,
364 U.S. 361 (1960) .......... 7

*Kraft Foods Co. v. Commissioner*,
232 F.2d 118 (2d Cir. 1956) .......... 11

*Lamie v. United States Trustee*,
540 U.S. 526 (2004) .......... 23, 24

*Mann Construction, Inc. v. United States*,
27 F.4th 1138 (6th Cir. 2022) .......... 27, 29, 30

*Marcello v. Bonds*,
349 U.S. 302 (1955) .......... 29

**Page(s)**

*Nassau Lens Co. v. Commissioner*,
308 F.2d 39 (2d Cir. 1962) ....................11

*North American Coal Corp. v. Director, Officer of Workers' Compensation Programs*,
854 F.2d 386 (10th Cir. 1988) .................... 31, 32

*Northern Arapahoe Tribe v. Hodel*,
808 F.2d 741 (10th Cir. 1987) .................... 31, 32

*Riggs v. Commissioner*,
64 T.C. 474 (1975).................... 8, 9, 10

*Sala v. United States*,
613 F.3d 1249 (10th Cir. 2010) ....................24

*Salem Financial, Inc. v. United States*,
786 F.3d 932 (Fed. Cir. 2015) ....................19

*Sorenson Communications Inc. v. Federal Communications Commission*,
755 F.3d 702 (D.C. Cir. 2014)....................31

*Summa Holdings, Inc. v. Commissioner*,
848 F.3d 779 (6th Cir. 2017) .................... 8, 12, 13, 20

*Sun Properties, Inc. v. United States*,
220 F.2d 171 (5th Cir. 1955) ....................9, 20

*Tucker v. Commissioner*,
766 F. App'x 132 (5th Cir. 2019) .................... 19, 20

*Utility Air Regulatory Group v. Environmental Protection Agency*,
573 U.S. 302 (2014)....................26

*WFC Holdings Corp. v. United States*,
728 F.3d 736 (8th Cir. 2013) ....................19

**STATUTES**

Administrative Procedure Act,
5 U.S.C. § 500 *et seq*.................... 4, 5, 26,
.................... 27, 28, 29, 30

## TABLE OF AUTHORITIES
(continued)

**Page(s)**


5 U.S.C. § 553 .....27

5 U.S.C. § 553(b)(B) .....31

5 U.S.C. § 559 .....29

5 U.S.C. § 706(2)(C) .....26

5 U.S.C. § 706(2)(D) ..... 27, 28

Tax Cuts and Jobs Act, Pub. L. No. 115-97,
Tit. I, 131 Stat. 2054 ..... 22, 23, 30, 31, 32

I.R.C. § 61(a)(3) ..... 13, 17

I.R.C. § 245A ..... 1, 2, 3, 4, 5,
..... 6, 7, 13, 14, 15, 17,
..... 21, 22, 23, 24, 25, 26, 31

I.R.C. § 245A(a) .....14

I.R.C. § 245A(b) .....22

I.R.C. § 245A(e) .....21

I.R.C. § 245A(f) .....21

I.R.C. § 245A(g) .....26

I.R.C. § 312(f)(1) ..... 13, 17

I.R.C. § 351 ..... 4, 12, 13, 17, 18

I.R.C. § 351(b) ..... 12, 13, 17

I.R.C. § 351(g) ..... 12, 13

Internal Revenue Code Subpart F,
I.R.C. §§ 951–65 ..... 14, 15, 21, 22, 23

I.R.C. § 951(a) ..... 22, 23

I.R.C. § 951A .....15

I.R.C. § 951A(a) ..... 22, 23

I.R.C. § 951A(b) .....22

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**


I.R.C. § 952(a) ....................22

I.R.C. § 952(c)(2) ....................22

I.R.C. § 954(a) ....................22

I.R.C. § 954(c) ....................22

I.R.C. § 954(d) ....................22

I.R.C. § 957(a) .................... 22, 23

I.R.C. § 964(e) .................... 4, 6, 7, 14, 21, 26

I.R.C. § 964(e)(1) ....................14

I.R.C. § 964(e)(4)(A)(i) ....................14

I.R.C. § 964(e)(4)(A)(ii) ....................14

I.R.C. § 964(e)(4)(A)(iii) ....................14

I.R.C. § 1001(a) ....................8

I.R.C. § 1248(a) .................... 4, 6, 7, 14, 21, 26

I.R.C. § 7701(*o*) .................... 3, 5, 6,
.................... 14, 15, 16, 24

I.R.C. § 7701(*o*)(1) .................... 2, 5, 6

I.R.C. § 7701(*o*)(5)(C) .................... 3, 6, 15

I.R.C. § 7805(a) ....................26

I.R.C. § 7805(e) .................... 4, 5, 28, 29, 30


**RULES AND REGULATIONS**


IRS Rev. Rul. 2003-125 ....................11

IRS Rev. Rul. 2004-59 ....................13

26 C.F.R. § 1.245A-5T ....................4, 25

26 C.F.R. § 1.245A-5T(b) ....................26

26 C.F.R. § 1.312-6(b) .................... 13, 17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

26 C.F.R. § 301.7701-2(b)(8) ........ 11

26 C.F.R. § 301.7701-3(a) ........ 11

26 C.F.R. § 301.7701-3(g)(1)(iv) ........ 13, 17

*Limitation on the Deduction for Dividends Received from Certain Foreign Corporations and Amounts Eligible for Section 954 Look-Through Exception*, 84 Fed. Reg. 28,398 (June 18, 2019) ........ 28, 30, 32

**OTHER AUTHORITIES**

H.R. Rep. No. 111-443 (2010) ........ 6, 10, 11, 16

S. Comm. On the Budget, 115th Cong., Reconciliation Recommendations Pursuant to H. Con. Res. 71 (Comm. Print 2017) ........ 22

Treasury Department, *Policy Statement on the Tax Regulatory Process*, https://home.treasury.gov/system/files/131/2019-Policy-Statement-on-the-Tax-Regulatory-Process.pdf (Mar. 5, 2019) ........ 28

## GLOSSARY

| | |
|---|---|
| 1-App. | Appellant's Appendix, Volume 1 of 2 |
| 2-App. | Appellant's Appendix, Volume 2 of 2 |
| Add. | Addendum bound with opening brief |
| CFC | Controlled foreign corporation, as defined in I.R.C. § 957(a) |
| Commissioner | Commissioner of the Internal Revenue Service |
| GILTI | Global Intangible Low-Taxed Income (I.R.C. § 951A) |
| I.R.C. | Internal Revenue Code (*i.e.*, Title 26 of the U.S. Code) |
| IRS | Internal Revenue Service |
| LGI | Liberty Global, Inc., a U.S. corporation and subsidiary of Liberty Global plc |
| LGI I | Liberty Global Broadband I Ltd., a U.K. company and subsidiary of LGI |
| Liberty Global plc | A U.K. corporation and ultimate owner of LGI and its affiliates |
| NQPS | Nonqualified preferred stock (*see* I.R.C. § 351(g)) |
| Tax Code or Code | Title 26 of the U.S. Code—the Internal Revenue Code |
| TCJA | Tax Cuts and Jobs Act, Pub. L. No. 115-97, Tit. I, 131 Stat. 2054 |

**GLOSSARY**
(continued)

| | |
|---|---|
| Telenet Group | Telenet Group BVBA and later Telenet Group NV/SA, a Belgian subsidiary of Liberty Global plc |
| TGH | Telenet Group Holding NV/SA, a Belgian subsidiary of Liberty Global plc and the holding company of Telenet Group |
| TIF LLC | Telenet International Financing USD LLC, a U.S. limited liability company and subsidiary of TGH |
| Treasury regulations | Title 26 of the Code of Federal Regulations |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The government's response confirms what this case is about: whether the IRS can override Tax Code provisions and Treasury regulations forming a reticulated regime requiring the IRS to allow a taxpayer's deduction. It *isn't* about whether LGI claimed to have something that, in substance, it did not have. On the government's own telling, LGI indisputably recognized real gain from the real sale of TGH—gain the government is trying to tax—arising from Telenet Group's successful telecommunications business in Europe. LGI took steps to recognize the business's value as gain to qualify for a deduction under § 245A.

Although § 245A says the deduction "shall" be allowed, the IRS couldn't accept that LGI qualified for the deduction. So it used retroactive temporary regulations, which it had issued without notice and comment to change the operation of the statute, to deny LGI's deduction. After the district court held those regulations invalid, the IRS invoked the economic substance doctrine. But Congress has given neither the IRS nor the courts the authority to override its legislative choices. The temporary regulations are substantively and procedurally invalid. And the economic substance doctrine cannot be used to disallow LGI's § 245A deduction, which derived from

real economic gain—as the government *concedes*. Taxpayers aren't required to make choices—like when and how to recognize real gain—that "will best pay the Treasury." *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934) (Learned Hand, J.), *aff'd* 293 U.S. 465 (1935).

**I.** The economic substance doctrine cannot bar LGI's § 245A deduction.

**A.** The doctrine isn't "relevant," I.R.C. § 7701(*o*)(1), here, for two reasons. *First*, the governing statutory and regulatory provisions permit taxpayers to make choices solely for tax reasons, no matter the motive. *Second*, although the doctrine may be relevant where the taxpayer lacks real gain or loss, it has never been used to disregard a real gain or loss.

Project Soy was about how and when to recognize real gain reflecting real value from the telecommunications business in Europe. That real value is why, when TGH was sold at step four, LGI recognized real gain—as the government *concedes*. And the choices at steps one through three to convert Telenet Group to a regarded corporation and to capitalize with NQPS and debt are choices that, by statutory and regulatory design, taxpayers can make based on comparative tax advantages. Thus, the doctrine isn't relevant here, and the government cannot use it to deny LGI's § 245A deduction.

**B.** The government doesn't dispute the operation of the relevant Code provisions, or that LGI satisfied the statutory requirements for a § 245A deduction. Instead, it argues that the doctrine applies by default, without any threshold "relevance" determination. In the government's view, the IRS or courts can decide whether to apply the doctrine based on "facts and circumstances" and guesses about Congress' purpose. Here, the government argues that (1) the doctrine applies because Congress couldn't have wanted LGI to claim a § 245A deduction without first being taxed under two other regimes—though nothing in the Code says that—and (2) the earnings and profits that Project Soy generated were "manufactured."

Those arguments fail.

For starters, the government ignores § 7701(*o*)'s text, which requires a threshold "determination of whether the economic substance doctrine is relevant." I.R.C. § 7701(*o*)(5)(C). Legislative history confirms that reading. And the government has pointed to no precedent—the touchstone for Congress' relevance requirement—supporting its notion that it can disregard *real gain*. Indeed, longstanding precedent *requires* real gain to be regarded. Nor can the government explain why it thinks it can rewrite statutory text under the banner of superior knowledge of congressional purpose.

The economic gain LGI recognized and the resulting earnings and profits were real—they reflected Telenet Group's successful telecommunications business. And Congress's precise, reticulated scheme permitted LGI to decide to use a § 351 organization with NQPS and debt to recognize that gain. The Code requires allowing LGI's deduction.

**II.** The government cannot use the temporary regulations, 26 C.F.R. § 1.245A-5T, to bar LGI's § 245A deduction, either.

**A.** The temporary regulations exceed Treasury's authority, because they declare whole categories of transactions ineligible for a § 245A deduction even though the Tax Code provides in I.R.C. §§ 245A, 964(e), and 1248(a) that those taxpayers "shall" receive the deduction. No grant of rulemaking authority gave Treasury the authority to rewrite the Code.

**B.** The temporary regulations are also procedurally invalid. As the district court correctly held, Treasury was required, but failed, to provide notice and an opportunity for comment under the Administrative Procedure Act (APA).

**C.** The government argues that I.R.C. § 7805(e) displaces the APA's notice-and-comment requirement, and that it had good cause to skip notice and comment anyway. But those arguments fail. The APA controls unless

expressly abrogated, and § 7805(e) doesn't satisfy that test. And there was no emergency supplying good cause to skip notice and comment.

The Court should reverse the district court's grant of summary judgment for the government and order entry of summary judgment for LGI.

## ARGUMENT

### I. The IRS cannot rely on the economic substance doctrine to disallow LGI's § 245A deduction, because doing so would contravene the Tax Code and Treasury regulations.

#### A. The economic substance doctrine is not relevant to the steps of Project Soy, so § 7701(*o*) doesn't authorize using the doctrine to deny LGI's § 245A deduction.

##### 1. As § 7701(*o*) and caselaw make clear, the IRS cannot use the economic substance doctrine to disregard a transaction unless the doctrine is "relevant."

The economic substance doctrine is a tool for determining tax consequences under statutory and regulatory provisions that make economic reality and taxpayer motive "relevant," I.R.C. § 7701(*o*), so that transactions are taxed based on economic reality instead of taxpayer labeling, *see Gregory v. Helvering*, 293 U.S. 465, 469 (1935); LGI Br. 39-52. When "the economic substance doctrine is relevant," a tax benefit cannot be denied if the transaction changed "the taxpayer's economic position" aside from "Federal income tax

effects," *and* the taxpayer had "a substantial" non-tax purpose. I.R.C. § 7701(*o*)(1).

Critically, however, the statute makes clear that before applying the doctrine, courts must "determin[e] … whether the economic substance doctrine is relevant." I.R.C. § 7701(*o*)(5)(C). Section 7701(*o*) leaves the relevance test to courts under preexisting judicial rules for when the doctrine applies. LGI Br. 40-42; *see* H.R. Rep. No. 111-443, at 295-96.

#### 2. The economic substance doctrine can be relevant only when there is a dispute about whether the taxpayer actually has in substance what a Code provision requires.

Caselaw makes clear that the economic substance doctrine can be relevant only when the IRS disputes whether a taxpayer actually has what a particular Code provision requires—like gain or loss. The doctrine isn't relevant when, as here, the taxpayer actually has what it claims—like real gain derived from real economic value from a real business. Nor is the doctrine relevant to taxpayer choices—like Telenet Group's conversion to a corporation or LGI's capitalization choices—that statutes and regulations permit taxpayers to make based on tax consequences. The doctrine also isn't relevant to Tax Code provisions and Treasury regulations that create a

reticulated scheme prescribing the tax consequences of certain things or events—like I.R.C. §§ 245A, 964(e), and 1248(a) here.

**a. The doctrine is relevant when, for example, there's a dispute about whether the taxpayer actually has losses or debt that it claims to have, but it isn't relevant when there's no question that the taxpayer has what it claims.**

***i.*** As caselaw makes clear, the economic substance doctrine can be relevant only when there is a dispute about whether the taxpayer actually has what a particular Code provision requires—say, loss or debt. It cannot apply to disregard real gain.

For example, in *Keeler v. Commissioner*, 243 F.3d 1212, 1214-19 (10th Cir. 2001), and *Blum v. Commissioner*, 737 F.3d 1303, 1307-08, 1312 (10th Cir. 2013), this Court applied the doctrine where the taxpayers, though claiming a loss, didn't truly sustain one. *See also Bohrer v. Commissioner*, 945 F.2d 344, 345-46, 348 (10th Cir. 1991). Similarly, in *Gregory*, the Supreme Court asked whether what the taxpayer did was really a "reorganization" under the Code. 293 U.S. at 467. Likewise, *Knetsch v. United States*, 364 U.S. 361 (1960), raised a question about whether what the taxpayer claimed was interest and indebtedness *actually was* interest and indebtedness. And in *Frank Lyon Co. v. United States*, 435 U.S. 561 (1978), the Court addressed whether the taxpayer, in fact,

owned certain property, as the governing Code provision required. LGI Br. 42-47.

The economic substance doctrine is thus relevant only when the question is whether a transaction's "[d]ollars-and-cents reality" matches the taxpayer's label. *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 785 (6th Cir. 2017). In those instances, "[a] focus on the economic substance of the transaction is just what the Code contemplates and just what the Commissioner and courts may consider." *Id.*

In contrast, the doctrine is *not* relevant when there's no question about whether the taxpayer actually has, say, the loss or gain it claims. In *Cottage Savings Ass'n v. Commissioner*, 499 U.S. 554, 556, 559, 566-68 (1991), for example, the taxpayer's claimed losses *were* real losses under I.R.C. § 1001(a), and economic substance principles weren't a basis for disallowing the deduction. Although the taxpayer intended to "generate tax losses" that could be deducted—without "substantially affect[ing] the [taxpayer's] economic position," *id.* at 557—the resulting losses and "disposition of property" were real. *Id.* at 559, 564-65. And because they were real, the economic substance doctrine wasn't relevant to the taxpayer's *choice* to recognize those losses. *See Granite Trust Co. v. United States*, 238 F.2d 670, 674-75 (1st Cir. 1956)

(respecting stock sale when purpose was to ensure subsequent liquidation recognized bona fide loss); *Riggs v. Commissioner*, 64 T.C. 474, 488-90 (1975).

Similarly, longstanding precedent establishes that taxpayers can sell property to "realiz[e] a capital gain" even without a non-tax purpose. *Sun Properties, Inc. v. United States*, 220 F.2d 171, 174-75 (5th Cir. 1955); LGI Br. 59. If the gain is real, *see Curry v. Commissioner*, 43 T.C. 667, 695 (1965), the economic substance doctrine has no role.

***ii.*** Here, the doctrine isn't relevant because the transaction reflected real gain. LGI is part of a foreign-owned group of businesses, including Telenet Group, which ran a successful foreign telecommunications enterprise with *real value*. LGI Br. 22-28. The government doesn't dispute that. U.S. Br. 14-15. The government also *acknowledges* (Br. 64) that the sale of TGH resulted in real gain. LGI simply chose how and when to recognize the gain from Telenet Group's operations—choices that longstanding caselaw confirms LGI could make, *see infra* pp. 18-20. Consequently, the economic substance doctrine has no role here.

**b. The doctrine isn't relevant to taxpayer choices that the Tax Code and Treasury regulations permit to be tax-motivated, like LGI's capitalization choices and Telenet Group's conversion.**

The economic substance doctrine also isn't relevant to taxpayer choices that the Tax Code and Treasury regulations allow taxpayers to make *for tax-motivated reasons*. Those include the choice to convert one kind of business entity into another (like when Telenet Group became a regarded corporation) and capitalization choices (like LGI's choice to use debt and NQPS). LGI Br. 52-58.

***i.*** Start with elections that taxpayers can make for tax purposes. Longstanding caselaw shows that the Tax Code has some "elective features" allowing taxpayers to invoke particular treatment based on the anticipated tax consequences. *Riggs*, 64 T.C. at 489. As courts have recognized, it would make no sense "to say that a corporation" can invoke an elective tax provision, but then deny the consequences of that provision simply because "the corporation formulate[d] the intent" to use that provision because of the tax consequences it prescribes. *Id.* at 489-90. Indeed, business entities make many choices that, by statutory or regulatory design, are "largely or entirely

based on comparative tax advantages." H.R. Rep. No. 111-443, at 296; *see* Chamber Br. 13-18.

The "check-the-box" regulations are an example. LGI Br. 53-56. They expressly allow businesses to decide, "for federal tax purposes," whether to be disregarded or regarded as a corporation, *see* 26 C.F.R. § 301.7701-3(a), and allow foreign entities to convert into per se corporations, *see id.* § 301.7701-2(b)(8). The choice to be regarded (or not), even if to convert taxable into non-taxable gain, is "specifically authorized 'for federal tax purposes,'" so the taxpayer need not "have a business purpose," *Dover Corp. v. Commissioner*, 122 T.C. 324, 351 n.19 (2004); *see* Rev. Rul. 2003-125 (permitting recognition of real stock loss via a check-the-box election); 1-App.141.

Likewise, the economic substance doctrine isn't relevant to a business's decisions about how to capitalize an entity. LGI Br. 56-58; *see, e.g.*, *Nassau Lens Co. v. Commissioner*, 308 F.2d 39, 46 (2d Cir. 1962); *Kraft Foods Co. v. Commissioner*, 232 F.2d 118, 124 (2d Cir. 1956). Indeed, "tax law deliberately … affords significance to and honors the *type* of investment" a taxpayer makes. *Kraft Foods*, 232 F.2d at 124. So long as the debt (for example) really is debt, *see supra* pp. 7-9, the choice to use it belongs to the taxpayer.

Section 351 reflects that basic principle. LGI Br. 56-58. It expressly contemplates that a taxpayer will make capitalization choices—like whether to use debt or NQPS (a debt-like preferred stock), I.R.C. § 351(b), (g)—and dictates the consequences of those choices.

***ii.*** The economic substance doctrine isn't relevant to Telenet Group's conversion to a regarded corporation. Nor is it relevant to LGI's capitalization choices. LGI Br. 53-58. When Telenet Group became a regarded corporation, it issued NQPS and debt. LGI Br. 26. The government does not dispute that Telenet Group *actually* converted to a regarded corporation or *actually* issued NQPS and debt. *See* U.S. Br. 16-19. The economic substance doctrine thus cannot undo the entity conversion and capitalization choices actually made in steps one through three, no matter *why* they were made.

**c. The doctrine cannot be used to override a reticulated statutory or regulatory regime that prescribes specific tax consequences.**

The economic substance doctrine also cannot be used to override a reticulated statutory or regulatory scheme that prescribes specific tax consequences based on inputs that a taxpayer actually has. Although the doctrine may be relevant when there is a question about whether the

taxpayer really *has* those inputs, if it does, then the IRS cannot "undo transactions that the terms of the Code expressly authorize." *Summa Holdings*, 848 F.3d at 782. Plus, as an interpretive canon, the doctrine is a "judicial device[]" that helps courts understand—not "nullify"—statutory and regulatory text. *Horn v. Commissioner*, 968 F.2d 1229, 1234, 1240 (D.C. Cir. 1992); LGI Br. 42-47. If the IRS could nullify the law whenever it doesn't like the result, "it's fair to ask what the point of making these terms accessible to the taxpayers and binding on the tax collector is." *Summa Holdings*, 848 F.3d at 782.

Here, the doctrine cannot nullify the reticulated statutory and regulatory provisions that require the IRS to allow LGI's § 245A deduction. LGI Br. 58-60; *infra* pp. 21-24. When Telenet Group became a regarded entity, a corporate organization under § 351 was "deem[ed]" to have occurred. *See* 26 C.F.R. § 301.7701-3(g)(1)(iv); Rev. Rul. 2004-59. Because Telenet Group issued NQPS and debt, the "deemed" organization meant that the Code required recognition of gain, *see* I.R.C. § 351(b), (g). And under the governing Code provisions and Treasury regulations, that gain increased TGH's earnings and profits. *See* 26 C.F.R. § 1.312-6(b); I.R.C. §§ 61(a)(3), 312(f)(1); LGI Br. 26-27.

When TGH was sold at step four, I.R.C. §§ 245A, 964(e), and 1248(a) operated in tandem to require the IRS to allow LGI's § 245A deduction. LGI Br. 27-28. That's because when LGI I recognized real gain from the sale of its interest in TGH, that gain was required to "be included in [LGI I's] gross income … as a dividend," I.R.C. § 964(e)(1), "to the extent of the earnings and profits" of TGH, I.R.C. § 1248(a). Section 964(e)(4)(A)(i) directed that the dividend "shall be treated" as LGI I's "subpart F income." LGI, as the U.S. shareholder, was required to include *its* pro rata share of that subpart F income in LGI's own "gross income." I.R.C. § 964(e)(4)(A)(ii). And § 964(e)(4)(A)(iii) provided that "the deduction under section 245A(a) shall be allowable" to LGI "with respect to [that] subpart F income included in gross income."

The Code and Treasury regulations thus created a detailed regime requiring the IRS to allow LGI's § 245A deduction. Section 7701(*o*) doesn't purport to say otherwise.

**B. The government's counterarguments lack merit.**

The government doesn't dispute the operation of the relevant Code provisions, or that LGI satisfied the statutory requirements to claim a § 245A deduction. Nor does it dispute that, if steps one through three are respected,

LGI is entitled to the § 245A deduction. Instead, it argues that there is no threshold "relevance" inquiry and that courts or the IRS can disallow a tax benefit if they think, based on the "facts and circumstances," that Congress wouldn't have intended the taxpayer to claim the benefit. U.S. Br. 29, 31, 38 n.16, 47-49. According to the government, LGI cannot claim a § 245A deduction because LGI's earnings and profits were "manufactured" or "engineered," U.S. Br. 15-16, 64, and because Congress would not have intended to allow LGI to claim the deduction unless the income from the sale of TGH first was taxed under the global intangible low-taxed income (GILTI) regime, *see* I.R.C. § 951A, or subpart F. Those arguments fail. They read the relevance requirement out of § 7701(*o*), misunderstand the well-established economic-substance-doctrine caselaw, ignore basic principles of statutory construction, and misapprehend the relationship between § 245A and the GILTI regime.

### 1. The government and district court nullify § 7701(*o*)'s relevance requirement.

As explained (at 5-6), § 7701(*o*) requires courts to make a threshold "determination of whether the economic substance doctrine is relevant." I.R.C. § 7701(*o*)(5)(C). The government and the district court's contrary

"tautology"—that "[t]here is no 'threshold' inquiry separate from the [§ 7701(*o*)] factors," Add. 9-10—is wrong. LGI Br. 60-62. It ignores both the statute's plain text, making the relevance language surplusage, and the statute's legislative history, which confirms that the doctrine isn't always relevant, *see* H.R. Rep. No. 111-443, at 296. The history of Congress' efforts to codify the doctrine only confirm that the relevance language was added intentionally and it must be given effect. NFTC Br. 8-11.

The government's contrary argument—that it can use the doctrine whenever it thinks the "facts and circumstances" warrant—doesn't just ignore the express statutory test. It also leaves the government's approach without guardrails or any sufficiently intelligible principle. The doctrine is not and cannot be a license to deny tax benefits whenever the IRS thinks a transaction "smells bad." *ACM Partnership v. Commissioner*, 157 F.3d 231, 265 (3d Cir. 1998) (McKee, J., dissenting).

### 2. The government cannot use the economic substance doctrine to deny LGI's § 245A deduction, which rests on real gains and the treatment the Tax Code and Treasury regulations expressly require.

#### a. Project Soy generated real gain and real earnings and profits from providing telecommunications services in Europe, so the economic substance doctrine is thus not relevant.

As explained (at 9, 13-14), the gain that Project Soy generated was real. It came from the real economic value of Telenet Group's successful European telecommunications business. The government acknowledges (Br. 14-15, 64), that the gain was real, based on real value generated by the business. It has to, since that's the very income it wants to tax.

What the government doesn't like is how and when LGI recognized the value of Telenet Group's successful business as gain through "engineered" transactions. U.S. Br. 64. But that's not a valid objection. Telenet Group had undisputedly real economic value. And TGH's earnings increased as a result of the undisputedly real § 351 organization. *See supra* p. 13. Indeed, the relevant Code provisions and Treasury regulations mandated that result when Telenet Group converted to a regarded corporation (which the government also doesn't dispute happened). *See* 26 C.F.R. §§ 301.7701-3(g)(1)(iv), 1.312-6(b); I.R.C. §§ 351(b), 61(a)(3), 312(f)(1). And the

doctrine cannot be used to disregard those *choices*. Simply put, the government doesn't dispute that the value was real or that § 351 and the Treasury regulations provide for the resulting gain. What the government doesn't like is the result. But the economic substance doctrine is an interpretive tool with limits set by precedent, not an all-purpose legislative sledgehammer.

#### b. The economic substance doctrine cannot be used to disregard Telenet Group's conversion to a corporation and the resulting § 351 organization or LGI's capitalization choices.

Given the relevance requirement, the government's assertion (Br. 52-57) that steps one through three can be disregarded fails. As explained (at 10-12), the economic substance doctrine isn't relevant to Telenet Group's conversion and the capitalization choices in steps one through three. Taxpayers can make those choices based on comparative tax advantages.

None of the decisions the government cites (Br. 54-55) shows that courts or the IRS can simply disregard a taxpayer's elections when there's no question that the taxpayer actually has what it claims. Instead, in each of those cases, the taxpayer claimed it had something (like a reorganization or loss) that it did not actually have:

- In *Gregory*, the Supreme Court asked whether what the taxpayer called a reorganization was, in fact, a reorganization. *Supra* p. 7.

- In *Coltec Industries, Inc. v. United States*, 454 F.3d 1340, 1343-46, 1360 (Fed. Cir. 2006), the court concluded that the taxpayer could not claim in full a deduction for supposed capital losses. The purported losses were based on an artificially inflated basis and were not economically real because they reflected only the taxpayer's $378.7 million in contingent liabilities while ignoring assets worth approximately the same. *See also WFC Holdings Corp. v. United States*, 728 F.3d 736, 740, 742-44 (8th Cir. 2013) (explaining that "no loss is deductible which is not real").

- In *Salem Financial, Inc. v. United States*, 786 F.3d 932, 951-52, 954 (Fed. Cir. 2015), the court examined a "money machine" with no "economic risk," and held that the taxpayer couldn't claim foreign tax credits for U.K. taxes that weren't in substance paid because it "'[got] back one-half of the U.K. tax' from [a counterparty]." But the taxpayer could claim interest deductions when it actually had paid interest on a loan. *Id.* at 958.

- In *Golsen v. Commissioner*, 445 F.2d 985, 986, 988 (10th Cir. 1971), the taxpayer claimed interest deductions, but had no personal liability and the loans could be cancelled any time without consequence—so there was no genuine "indebtedness," and thus no interest payments to deduct.

- In *American Electric Power Co. v. United States*, 326 F.3d 737, 743 (6th Cir. 2003), the taxpayer claimed interest deductions that "arose 'from thin air.'" These were deductions "on paper" only, and the taxpayer did not "actually suffer[] any of the ordinary economic consequences of paying the money," "because circular netting transactions obviated the obligation to ever actually repay the underlying policy loans." *Id.*

The government relies heavily (Br. 54-57) on *Tucker v. Commissioner*, 766 F. App'x 132, 138 (5th Cir. 2019), but *Tucker* illustrates *LGI's* argument. Before applying the economic-substance test, the court determined

relevance—whether "[i]t was appropriate for the tax court to apply the economic substance doctrine to the transaction to determine whether 'what was done, apart from the tax motive, was the thing which the statute intended.'" *Id.* at 138 (quoting *Gregory*, 293 U.S. at 469). Citing to *Summa Holdings*, the court recognized that the doctrine applies only if the transaction "'was a labeling-game sham or defied economic reality.'" *Id.* at 139. And the transactions in *Tucker* did defy economic reality—the taxpayer acquired four options that generated a net economic *gain* of $12 million, yet he claimed a tax *loss* of $39 million without "recogniz[ing] the [$51 million] offsetting gain on the options." *Id.* That sham, not the check-the-box election, was subject to the economic substance doctrine. Indeed, under longstanding precedent, no "business purpose" is required to recognize gains, and taxpayers may choose to recognize real "gains and losses at times which provide the optimum tax benefits." *Sun Properties*, 220 F.2d at 175.

When, as here, the Code and Treasury regulations give taxpayers a choice to convert a business entity, use different forms of capital, and recognize gain, the doctrine cannot be used to disregard those genuine choices.

**c. The economic substance doctrine doesn't permit the IRS to override the express consequences that §§ 245A, 964(e), and 1248(a) require, and the government's view of § 245A's and GILTI's purposes doesn't allow it to rewrite the statute.**

***i.*** As explained (at 14), §§ 245A, 964(e), and 1248(a) work together to direct that LGI's § 245A deduction "shall" be allowed. The government cannot override that reticulated scheme based on its notions of Congress' intent, which the government apparently divines (Br. 52) from legislative history. When Congress enacted these interwoven provisions, Congress meant what it said and said what it meant. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002). As with the rest of the U.S. Code, "the [Tax] Code's plain text" governs. *Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001).

***ii.*** The government is wrong (Br. 42-43) that Congress intended all income to first be taxed under GILTI or subpart F before a taxpayer can claim a deduction under § 245A. The straightforward application of §§ 245A, 964(e), and 1248(a) makes that clear. Had Congress wanted to condition § 245A deductions on taxation under a different regime (like GILTI or subpart F), it could have said so. Instead, Congress identified *other* specific situations in which the deduction is barred. *See* I.R.C. § 245A(e)-(f).

Other provisions too demonstrate that Congress did not create complete overlap between § 245A, on the one hand, and GILTI and subpart F taxation, on the other. For example, the regimes address different categories of income. Section 245A applies to dividends of *all* foreign earnings. That make sense, because the TCJA moved the United States to a territorial regime, where, generally, "income earned outside the United States is not taxed in the United States." S. Comm. on the Budget, 115th Cong., Reconciliation Recommendations Pursuant to H. Con. Res. 71, at 358 (Comm. Print 2017). In comparison, subpart F applies only to some categories of income, like insurance income and investment income, *see* I.R.C. §§ 952(a), (c)(2), 954(a), (c), (d), while GILTI seeks to tax income from intangible property generally earned in low-tax jurisdictions, *see* I.R.C. § 951A(b).

Section 245A, on the one hand, and GILTI and subpart F, on the other, also apply to different categories of domestic corporations based on their ownership interest in a foreign corporation. Section 245A applies to dividends received by domestic corporations owning ten percent or more of a foreign corporation. *See* I.R.C. § 245A(b) (§ 245A applies to dividends received from "a specified 10-percent owned foreign corporation"). But taxation under GILTI and subpart F applies only to U.S. shareholders "of

any controlled foreign corporation," I.R.C. §§ 951A(a), 951(a), and a "controlled foreign corporation" must be *more than 50%* owned or controlled by U.S. shareholders, I.R.C. § 957(a). Thus, when U.S. shareholders own, in aggregate, from 10% to 50% of a foreign corporation, they may be eligible for a § 245A deduction, even though the earnings triggering those deductions aren't subject to GILTI or subpart F. In addition, GILTI and the TCJA's amendments to subpart F and § 245A have different effective dates. *See* Pub. L. No. 115-97, § 14201(d), 131 Stat. 2054, 2209-11 (2017) (GILTI and amended subpart F applicable to *taxable years* beginning after December 31, 2017); *id.* § 14101(f), 131 Stat. at 2192 (§ 245A applicable to *distributions* made after December 31, 2017).

Allowing LGI to claim a § 245A deduction without taxation under GILTI or subpart F doesn't violate Congress' intent, contrary to the government's argument. Nor is there a "gap" for the economic substance doctrine to fill here, as the government claims, Br. 6-14. Congress expresses its intent with the words of statutes. And no statute pursues its purpose—much less a party's speculation about purpose—at all costs. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017). It's not this Court's or the IRS's job "to rescue Congress from its drafting errors, and to provide for what [the Court

or the IRS] might think … is the preferred result." *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004).

***iii.*** What's more, step four generated the § 245A deduction that the government argues LGI improperly claimed. So even assuming the government's arguments about congressional intent were correct, that would just support disregarding step four. *See Sala v. United States*, 613 F.3d 1249, 1252 (10th Cir. 2010). And because step four generated both the income that the IRS wants to tax *and* the deemed dividend producing the § 245A deduction, disregarding that step means there's no income to tax, and LGI is entitled to a refund anyway. LGI Br. 64-65.

### 3. The government's forfeiture arguments fail.

**a.** The government argues (Br. 48) that LGI forfeited its argument that the economic substance doctrine is an interpretive tool. Not so. LGI argued below, and reiterates here, that § 7701(*o*) requires courts to first determine whether the doctrine is relevant, and that the government can't rewrite the Tax Code based on its preferred outcomes. *See, e.g.*, 1-App.127-29, 1-App.135-36, 1-App.140, 1-App.260-62, 1-App.273-76, 1-App.51-60.

**b.** The government also argues (Br. 60-64) that LGI abandoned its argument that step four must be disregarded if steps one through three are

disregarded. That's incorrect. LGI raised that argument below, explaining that the government's arguments go to step four and thus would require disregarding step four. 1-App.276-77.

**c.** Finally, the government says that LGI waived the argument that, even if the Court disregards steps one through three, LGI still is entitled to at least some of its claimed § 245A deduction, and that the argument is meritless anyway. But LGI did not waive that argument; it's being litigated in a separate proceeding in the district court that has since been stayed. *United States v. Liberty Global Inc.*, No. 1:22-cv-02622 (D. Colo. May 10, 2024), Doc. 46. Plus, the government recognizes (Br. 14-15) that there were earnings and profits, so it follows that even without steps one through three, LGI would have been entitled to *some* deduction. LGI Br. 63-64.

## II. The government cannot disallow LGI's § 245A deduction under the temporary regulations because those regulations are invalid, as the district court correctly held.

The government argues that it can use temporary Treasury regulations, 26 C.F.R. § 1.245A-5T, even if the economic substance doctrine doesn't apply. That's wrong, because the regulations are invalid for three reasons: *First*, they exceed Treasury's authority by purporting to rewrite the Code. *Second*, Treasury issued the regulations without notice and comment or good

cause to skip that process. *Third*, Treasury lacked authority to make retroactive regulations. 1-App.45-68, 1-App.97-111.

The district court correctly held that the regulations were invalid because Treasury failed to comply with the APA's notice-and-comment requirement, without reaching LGI's other arguments. 1-App.116-17. But all three arguments show that the regulations are unlawful and cannot be used to disallow LGI's § 245A deduction.

### A. The temporary regulations exceed Treasury's authority.

The temporary regulations are unlawful because they purport to rewrite §§ 245A, 964(e), and 1248(a). 1-App.51-57; *see* 5 U.S.C. § 706(2)(C). Those provisions mandate that LGI's § 245A deduction "shall" be allowed. *Supra* p. 14. The regulations at issue require just the opposite. *See* 26 C.F.R. § 1.245A-5T(b). But "an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 328 (2014). The regulations thus exceed Treasury's authority. *Cf. Garland v. Cargill*, 602 U.S. 406, 410 (2024).

The government's reliance on § 245A(g)'s and § 7805(a)'s general grants of rulemaking authority fails. "[A]uthority to 'carry out the provisions of'" a statute isn't authorization "to render nugatory" those provisions.

*Allegheny Defense Project v. FERC*, 964 F.3d 1, 16 (D.C. Cir. 2020) (en banc). Nor can "[t]he grant of authority to promulgate 'necessary' regulations" "expand the scope of the provisions the agency is tasked with 'carry[ing] out.'" *Gulf Fishermens Ass'n v. National Marine Fisheries Service*, 968 F.3d 454, 465 (5th Cir. 2020).

### B. Treasury was required, but failed, to comply with the APA's notice-and-comment procedures before issuing the temporary regulations.

The district court correctly held that the regulations were invalid because Treasury failed to comply with the APA's notice-and-comment requirement without good cause. 1-App.116.

#### 1. The APA requires notice and comment before agencies issue legislative rules.

The APA requires agencies to provide notice to the public about a proposed legislative rule—that is, one with the force of law—and an opportunity for comment. 5 U.S.C. § 553. "[A]fter considering the comments," agencies must "make appropriate changes and include in the final rule a 'concise general statement of' its contents." *Mann Construction, Inc. v. United States*, 27 F.4th 1138, 1142 (6th Cir. 2022). Courts must "set aside" agency actions that flunk the notice-and-comment requirement. 5 U.S.C.

§ 706(2)(D). Treasury has acknowledged that "[t]he best practice for agency rulemaking is the [APA's] notice-and-comment process." Treasury Department, *Policy Statement on the Tax Regulatory Process*, https://home.treasury.gov/system/files/131/2019-Policy-Statement-on-the-Tax-Regulatory-Process.pdf (Mar. 5, 2019).

### 2. Treasury didn't comply with the APA's notice-and-comment requirement.

The government doesn't dispute that the temporary regulations are legislative rules. The regulations thus were subject to the APA's notice-and-comment requirement. Because Treasury issued them without notice and comment, *Limitation on the Deduction for Dividends Received from Certain Foreign Corporations and Amounts Eligible for Section 954 Look-Through Exception*, 84 Fed. Reg. 28,398, 28,405 (June 18, 2019), the district court correctly set them aside.

## C. The government's counterarguments lack merit.

The government says I.R.C. § 7805(e) displaces the APA's notice-and-comment requirement. But even if it doesn't, the government says, Treasury had good cause to skip notice and comment here. Those arguments fail.

#### 1. Section 7805(e) does not displace the APA's notice-and-comment requirement.

**a.** Occasionally, Congress makes exceptions to the APA's notice-and-comment requirement. *Mann Construction*, 27 F.4th at 1144. But exceptions "are not lightly … presumed." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955). Another statute must "expressly" abrogate the notice-and-comment requirement. 5 U.S.C. § 559; *Mann Construction*, 27 F.4th at 1144-45. For example, a statute might "clear[ly] reject[]" the APA's default rule by creating "specific procedures" that "differ from those of the APA," or by saying explicitly that the APA "shall not apply." *Mann Construction*, 27 F.4th at 1145. But when a statute varies from the APA in minor ways, those variations typically do not show express abrogation of the APA's requirements. *Id.* So too with statutory schemes that are "compatible with the APA," even if they have their own "extensive and exclusive procedural components." *Id.*

**b.** Section 7805(e) doesn't expressly abrogate the APA's notice-and-comment requirement. It allows Treasury to promulgate temporary regulations, requires those regulations to "also be issued as … proposed regulation[s]," and provides that the temporary regulations expire within three years. I.R.C. § 7805(e). The provision says nothing, "expressly or

otherwise, that modifies the [APA's] baseline procedure." *Mann Construction*, 27 F.4th at 1146. "Nor did Congress expressly displace" the notice-and-comment requirement "by creating a new," incompatible process for promulgating temporary regulations. *Id.*

To the contrary, § 7805(e)'s requirements and the notice-and-comment requirement are compatible. Treasury could provide notice and an opportunity for comment before issuing a temporary regulation; when it issues the temporary regulation, it still can issue a proposed regulation that might later become final. And there's no reason why notice and comment would interfere with a temporary regulation's three-year sunset period. Temporary regulations also allow Treasury to test complex rules for a finite period, while finalizing more longstanding provisions. Fulfilling the APA's notice-and-comment requirement thus would not make temporary regulations pointless, contrary to the government's assertion (Br. 67).

**2. Treasury lacked good cause to skip notice and comment.**

Treasury offered four reasons it thought it had good cause to avoid notice and comment. *See* 84 Fed. Reg. at 28,398; 1-App.120-21. On appeal, the government abandons all but one. Now, the government contends only that Treasury had good cause because it was concerned that some taxpayers were

engaging in transactions that would undermine the TCJA, and if it had given the public notice, taxpayers would have raced to engage in unlawful transactions "that would be difficult for the IRS to uncover in an audit." U.S. Br. 67-69. That argument fails.

*First*, to the extent the government think transactions like Project Soy would have undermined the TCJA, that argument lacks merit because the Code permits LGI to claim a § 245A deduction. *Supra* pp. 13-14.

*Second*, the government can't meet the good-cause standard anyway. In limited situations, an agency can forgo notice and comment when there is "good cause" for finding "that notice and public procedure … are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). Agencies bear the burden of showing good cause, *North American Coal Corp. v. Director, Officer of Workers' Compensation Programs*, 854 F.2d 386, 389 (10th Cir. 1988), and courts review good-cause claims de novo, *Sorenson Communications Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014). The good cause exception is "narrowly construe[d]" and typically applies only in emergency situations, like when delaying issuance of a rule "would imminently threaten life or physical property," *id.*, or harm a person's well-being, *North American Coal*, 854 F.2d at 389. *See id.* at 387-89 (coal miners would have lost

health benefits); *Northern Arapahoe Tribe v. Hodel*, 808 F.2d 741, 751 (10th Cir. 1987) (risk of wildlife endangerment or extinction).

No emergency justified forgoing notice and comment here. Any delay wouldn't have threatened life or property. And any urgency in issuing the regulations was of Treasury's own making, as the district court recognized. 1-App.122; *see Environmental Defense Fund, Inc. v. EPA*, 716 F.2d 915, 921 (D.C. Cir. 1983). Treasury took 18 months to issue the temporary regulations. It could have allowed for notice and comment during that period. *See* Pub. L. No. 115-97, Tit. I, 131 Stat. 2054 (TCJA enacted in December 2017); 84 Fed. Reg. 28,398 (temporary regulations issued in June 2019).

The government's assertions that it didn't want to give regulated parties a chance to change their conduct, and that it would be harder to uncover transactions in an audit, don't work either. It's likely always the case that notice allows regulated parties to change their conduct, and that it's easier to prohibit transactions than to uncover them through an audit. But if those reasons were sufficient to establish good cause, the exception would swallow the notice-and-comment requirement. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 676 (9th Cir. 2021).

## CONCLUSION

The Court should reverse the grant of summary judgment for the government and order entry of summary judgment for LGI.

Dated: August 1, 2024

Respectfully submitted,

/s/ Shay Dvoretzky

Shay Dvoretzky
*Counsel of Record*
Rajiv Madan
Royce Tidwell
Christopher Bowers
Nathan Wacker
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Jeremy Patashnik
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Gregory S. Tamkin
DORSEY & WHITNEY
1400 Wewatta St., Ste. 400
Denver, CO 80202

*Counsel for Plaintiff-Appellant Liberty Global, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, as calculated by Microsoft Word, it contains 6,499 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(B). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) and Circuit Rule 32(A) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: August 1, 2024

Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Plaintiff-Appellant Liberty Global, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 1, 2024

Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Plaintiff-Appellant Liberty Global, Inc.*