Case No.: 23-01410

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

Liberty Global, Inc.,

*Plaintiff-Appellant*,

v.

United States of America,

*Defendant-Appellee*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO
No. 1:20-cv-03501-RBJ

_____

## BRIEF OF NATIONAL FOREIGN TRADE COUNCIL, INC. AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT

Anne Gordon
National Foreign Trade Council, Inc.
1225 New York Ave., NW
Suite 650B
Washington, DC 20005
Tel: (202) 887-0278

Rocco Femia
Robert J. Kovacev
Jeffrey Tebbs
Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006
Tel: (202) 626-5800

*Counsel for National Foreign Trade Council, Inc.*

# **TABLE OF CONTENTS**

Page

Interest of *Amicus Curiae* ...................................................................1

Argument.............................................................................................3

I.  The Codification of the Economic Substance Doctrine in Section 7701(o) Explicitly Retained the Relevance Threshold...................................3

  A.  Overview of Section 7701(o) ........................................................3

  B.  Issue Presented and Decision Below.............................................4

  C.  Section 7701(o)'s Text Unambiguously Includes a Threshold "Relevance" Inquiry that Must be Addressed before Applying the Economic Substance Doctrine..........................................................5

II.  Statutory History Confirms Congressional Intent to Preserve the "Relevance" Standard as a Threshold Inquiry Before Applying the Economic Substance Doctrine...........................................................8

III.  The District Court's Interpretation Conflicts with the Considered Position of the Agency Charged with Enforcing the Federal Tax Laws.......11

IV.  The District Court Decision Would Introduce Uncertainty into the Federal Tax Treatment of Transactions Previously Established as Outside the Scope of the Economic Substance Doctrine ...........................12

  A.  Transactions to Recognize Economic Gains or Losses for Tax Purposes..................................................................................14

  B.  Transactions to Facilitate Recognition of Taxable Loss on Liquidation of Subsidiary...........................................................17

  C.  Tax Elections That Result in Deemed Transactions ...........................19

V.  Conclusion .................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                  **Page(s)**

*Associated Wholesale Grocers, Inc. v. United States*,
    927 F.2d 1517 (10th Cir. 1991) ...........................................................................18

*Avco Mfg. Corp. v. Comm'r*,
    25 T.C. 975 (1956), *aff'd in relevant part*, No. 45633, 1957 WL
    10899 (2d Cir. 1957) ...........................................................................................17

*Blum v. Comm'r*,
    737 F.3d 1303 (10th Cir. 2013) .........................................................................12

*Comm'r v. Day & Zimmerman*,
    151 F.2d 517 (3d. Cir. 1945) ..............................................................................17

*Cottage Savings Association v. Commissioner*,
    499 U.S. 554 (1991) ............................................................................................15

*Curry v. Commissioner*,
    43 T.C. 667 (1965) ..............................................................................................16

*In re Dawes*,
    652 F.3d 1236 (10th Cir. 2011) ............................................................................5

*Dover Corp. v. Comm'r*,
    122 T.C. 324 (2004) ............................................................................................20

*George L. Riggs, Inc. v. Comm'r*,
    64 T.C. 474 (1975) ........................................................................................18, 19

*Granite Trust Co. v. United States*,
    238 F.2d 670 (1st Cir. 1956) ...............................................................................17

*Hobby v. Comm'r*,
    2 T.C. 980 (1943) ................................................................................................16

*Sun Properties, Inc. v. United States*,
    220 F.2d 171 (5th Cir. 1955) .........................................................................15, 16

*Trotz v. Comm'r*,
    361 F.2d 927 (10th Cir. 1966) ............................................................................13

*Woods Investment Co. v. Comm'r,*
   85 T.C. 274 (1985) .............................................................................13

**Statutes**

Health Care and Education Reconciliation Act of 2010, Pub. L. No.
   111-152, Title I, § 1409 (2010) ...........................................................3

Tax Reduction and Reform Act of 2007, H.R. 3970, 110th Cong.
   § 3501 (2007) (as introduced in the House, Oct. 25, 2007) ..............10

I.R.C. § 332(b) ......................................................................................17

I.R.C. § 7701(o) ............................................... 2, 3, 4, 5, 6, 7, 8, 11, 12, 13, 20

I.R.C. § 7701(o)(5)(C) ....................................................................4, 6, 7, 11

J. Comm. Tax'n, *Technical Explanation of the Revenue Provisions of
   the "Reconciliation Act of 2010," as amended, in combination
   with the 'Patient Protection and Affordable Care Act,"* (Mar. 21,
   2010) ....................................................................................................11

Title VII, Subtitle A, Section 701, "Clarification of Economic
   Substance Doctrine," of the CARE Act of 2003, S. 476, reported in
   S. Rpt. No. 108th Cong., 1st Sess. (Feb. 27, 2003) .........................8, 9

**Rules and Regulations**

Fed. R. App. P. 29(a)(2) ........................................................................1

Rev. Rul. 2003-125, 2003-2 C.B. 1243 (Dec. 29, 2003) .......................19

Treas. Reg. § 301.7701-3(g)(1) ..............................................................19

**Other Authorities**

AM. BAR ASS'N, COMMENTS ON THE PROPOSED CODIFICATION OF THE ECONOMIC
   SUBSTANCE DOCTRINE, 5 (Apr. 24, 2003) ...........................................9

Charlene Luke, *The Relevance Games: Congress's Choices for
   Economic Substance Gamemakers,* 66 TAX LAW. 551, (2013)............8

H.R. Rep. No. 108-755 (Oct. 7, 2004) ....................................................10

H.R. Rep. No. 109-455 (May 9, 2006) ...................................................10

H.R. Rep. No. 111-299(II), (2009) ........................................................11

H.R. Rep. No. 111-443(I), (2010).............................................3, 4, 11, 19

*Interim Guidance Memorandum on Economic Substance Doctrine and Related Penalties*, LB&I-04-0422-0014 (Apr. 22, 2022)...........................13

IRS Acquiescence, 1976-2 C.B. 1 (Dec. 31, 1976) .................................19

IRS Acquiescence, 1986-2 C.B. 1 (Dec. 31, 1986) .................................14

IRS Action on Decision, 1975 WL 38131 (Sept. 29, 1975) .....................19

IRS Action on Decision 1986-39 (June 30, 1986)....................................14

*LB&I Directive for Industry Directors, Guidance for Examiners and Managers on the Codified Economic Substance Doctrine and Related Penalties*, LB&I-4-0711-015 (July 15, 2011) ........................................13

Notice 2010-62, 2010-40 I.R.B. 411 (Sept. 13, 2010).............................12

Notice 2014-58, 2014-44 I.R.B. 746 (Oct. 27, 2014)...............................12

N.Y. State Bar Ass'n, Tax Section, Summary Report on the Provisions of Recent Senate Bills That Would Codify the Economic Substance Doctrine, 3, 8 (May 21, 2003) .....................................9

S. Rep. No. 109-336 (Sept. 15, 2006).....................................................10

S. Rep. No. 110-206 (Oct. 25, 2007) ......................................................11

### Interest of *Amicus Curiae*[1]

*Amicus curiae* National Foreign Trade Council, Inc. ("NFTC") is the premier business organization in the United States advocating a rules-based world economy to foster international trade, tax, and investment policies, and economic cooperation. Founded in 1914, the NFTC is the oldest and largest U.S. association of businesses devoted to international trade and tax matters.

The NFTC's mission is to promote efficient and fair global commerce by advocating public policies that foster an open international trade and investment regime. The NFTC's membership includes over 100 companies, representing most major sectors of the U.S. economy, including manufacturing, technology, energy, retail, and agribusiness. The NFTC's membership consists primarily of U.S. firms engaged in all aspects of international business, trade, and investment. NFTC members account for over $5 trillion in global revenue. They also represent a significant share of total U.S. exports and U.S. private foreign investment.

The NFTC respectfully submits this brief amicus curiae to address the district court's conclusion that the codified economic substance doctrine does not require a determination that the doctrine is "relevant" to a transaction before

---

[1] No counsel for a party authored this brief in whole or in part, and no person or entity, other than amicus curiae, its members, and its counsel, made a monetary contribution to the preparation or submission of this brief. NFTC has received consent from all parties to file this amicus brief. Fed. R. App. P. 29(a)(2).

analyzing whether the federal tax benefits of that transaction should be disallowed. The economic substance doctrine is an essential tool for preventing inappropriate results under the federal tax law. However, the doctrine has always been limited to assessing the results of certain types of transactions. When Congress codified the common law doctrine in section 7701(o) of the Internal Revenue Code, it explicitly incorporated the historic "relevance" standard into the text of the statute.[2]

The district court's decision reads the "relevance" standard out of the governing law, violating Congressional intent and contradicting decades of judicial precedent. Predictable application of the federal tax law is critical to fostering cross-border investment. The district court's decision has the potential to destabilize the application of the federal tax law, inserting uncertainty into routine transactions never intended by Congress to be within the sweep of the economic substance doctrine. For these reasons, NFTC urges the Court to reject the district court's reasoning and reverse that court's decision.

---

[2] All section references are references to the Internal Revenue Code of 1986, as amended (the "Code").

## Argument

### I. The Codification of the Economic Substance Doctrine in Section 7701(o) Explicitly Retained the Relevance Threshold

#### A. Overview of Section 7701(o)

Prior to the enactment of section 7701(o), the economic substance doctrine was a common law judicial doctrine that courts applied to "den[y] tax benefits arising from transactions that do not result in a meaningful change to the taxpayer's economic position other than a purported reduction in federal income tax." H.R. Rep. No. 111-443(I), at 292 (2010). In 2010, Congress codified specific aspects of the economic substance doctrine in section 7701(o) of the Internal Revenue Code. Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, Title I, § 1409 (2010). Section 7701(o)(1) requires certain transactions to satisfy both an objective and a subjective test to be respected for federal tax purposes. Specifically, the federal tax benefits of such transactions are allowed only if:

> (A) the transaction changes in a meaningful way (apart from Federal income tax effects) the taxpayer's economic position [commonly referred to as "***objective economic effect***"] and

> (B) the taxpayer has a substantial purpose (apart from Federal income tax effects) for entering into such transaction [commonly referred to as "***substantial business purpose***"].

Prior to the 2010 legislation, certain lower federal courts interpreted the doctrine as requiring that a transaction satisfy either objective economic effect or substantial

3

business purpose. H.R. Rep. No. 111-443(I), at 293 (2010). The 2010 enactment "provide[d] a uniform definition of economic substance" and clarified "that the economic substance doctrine involves a conjunctive analysis − there must be an inquiry regarding the objective effects of the transaction on the taxpayer's economic position as well as an inquiry regarding the taxpayer's subjective motives for engaging in the transaction." *Id.* at 295-97.

The opening clause of section 7701(o)(1) cabins the scope of the doctrine, stating that the conjunctive test is only applied "[i]n the case of any transaction to which the economic substance doctrine is relevant." In a standalone paragraph designated a "special rule," the statute further specifies that "[t]he determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection had never been enacted." I.R.C. § 7701(o)(5)(C). Through this "special rule," Congress preserved the judiciary's role in determining when an economic substance analysis is required.

**B.    Issue Presented and Decision Below**

At issue in this case is whether the conjunctive test codified by Congress in 2010 applies indiscriminately to all transactions or whether, consistent with the statutory text and legislative history, certain types of transactions are outside of its scope. In the decision below, the district court concluded that "[t]here is no 'threshold' inquiry separate from the statutory factors" of objective economic

4

effect and substantial business purpose. Order on Cross-Motions for Summ. J., Dist. Ct. Doc. 87 (Oct. 31, 2023), at 2-App.289. The court interpreted the legislative history as "suggest[ing] that the doctrine's relevance is coextensive with the statute's test for economic substance, provided by the operative clause." *Id.* at 2-App.287. The court further observed that Tenth Circuit case law "conspicuously omits any mention of a threshold inquiry or a separate or additional question that courts must resolve in applying the economic substance doctrine." *Id.* at 2-App.287-88. Based on those observations, the court stated that, "[a]t the risk of tautology, I proceed with the conclusion that the economic substance doctrine applies when a transaction lacks economic substance," which is "analyzed using the enumerated statutory prongs[.]" *Id.* at 2-App.288-89.

### C.    Section 7701(o)'s Text Unambiguously Includes a Threshold "Relevance" Inquiry that Must be Addressed before Applying the Economic Substance Doctrine

The district court's decision cannot be reconciled with the unambiguous statutory text. Section 7701(o)(1) provides that the conjunctive test is only applied "[i]n the case of any transaction to which the economic substance doctrine is relevant." It is a fundamental rule of statutory construction that each word must be given effect. *In re Dawes*, 652 F.3d 1236, 1242 (10th Cir. 2011) (rejecting interpretation of statute that would "ignore 'one of the most basic interpretive canons' – that a 'statute should be construed so that effect is given to all its

provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (citation omitted). If the district court were correct that "relevance" was "coextensive with the statute's test for economic substance," the statutory clause "to which the economic substance doctrine is relevant" would be rendered meaningless. Under the interpretation applied by the district court, the entire clause could be deleted from section 7701(o)(1) without affecting the purported meaning, as illustrated here.

> (1) Application of doctrine. In the case of any transaction ~~to which the economic substance doctrine is relevant,~~ such transaction shall be treated as having economic substance only if—
>
>> (A) the transaction changes in a meaningful way (apart from Federal income tax effects) the taxpayer's economic position, and
>>
>> (B) the taxpayer has a substantial purpose (apart from Federal income tax effects) for entering into such transaction.

That interpretation cannot plausibly have been intended by Congress, particularly given that the statute further provides a special rule in section 7701(o)(5)(C), addressing how to apply the relevance standard.

Section 7701(o)(5)(C) directs courts to determine whether the economic substance doctrine is relevant to a transaction by applying the same common law analysis that courts had applied before the economic substance doctrine was codified ("[t]he determination of whether the economic substance doctrine is

relevant to a transaction shall be made in the same manner as if this subsection [section 7701(o)] had never been enacted."). In the decision below, the district court did not analyze the extent to which courts would have applied the economic substance doctrine to the transaction at issue without regard to the codification of the doctrine. Rather, the district court read the relevance standard out of the statute, concluding that the doctrine is relevant whenever "a transaction lacks economic substance," determined by analyzing the "enumerated statutory prongs" of objective economic effect and substantial business purpose. Order on Cross-Motions for Summ. J., at 2-App.288-89; *see also id.* at 2-App.287 ("the doctrine's relevance is coextensive with the statute's test for economic substance, provided by the operative clause").

But section 7701(o) modified that test, requiring that certain transactions satisfy both "statutory prongs" (making the analysis conjunctive) and specifying that the taxpayer's non-tax business purpose must be "substantial." If the district court were correct that the doctrine is relevant any time a transaction fails to satisfy the modified test, then it would be impossible to follow the directive in section 7701(o)(5)(C) that relevance is determined as if section 7701(o) "had never been enacted." The "special rule" in section 7701(o)(5)(C) was briefed by the parties and discussed at oral argument, but the decision below does not even mention this part of the statute. *See* Pl. Mot. Summ. J., Dist. Ct. Doc. 75 (July 28, 2023), at 1-

App.138; Pl. Resp. Def. Mot. Summ. J., Dist. Ct. Doc. 79 (Aug. 31, 2023), at 1-

App. 261, 268; Hg. Tr. on Mot. Summ. J., Dist. Ct. Doc. 86 (Oct. 13, 2023), at 2-

App.517-18.

## II.     Statutory History Confirms Congressional Intent to Preserve the "Relevance" Standard as a Threshold Inquiry Before Applying the Economic Substance Doctrine

Section 7701(o)'s reference to "relevance" in two separate locations was not

a rhetorical flourish. The statutory history establishes that Congress added the

"relevance" language specifically to prevent the IRS and the courts from applying

the subjective and objective tests to transactions that had never been subject to the

economic substance doctrine.

From 1999 through 2010, Congress considered at least 70 different bills to

codify the economic substance doctrine. *See* Charlene Luke, *The Relevance*

*Games: Congress's Choices for Economic Substance Gamemakers*, 66 Tax Law.

551, 562-63 (2013). Early versions of the proposed legislation lacked any statutory

language restricting application of the conjunctive test to transactions which were

"relevant." *See*, *e.g.*, Title VII, Subtitle A, Section 701, "Clarification of Economic

Substance Doctrine," of the CARE Act of 2003, S. 476, reported in S. Rpt. No.

108-11, 108th Cong., 1st Sess. (Feb. 27, 2003). A committee report issued in

connection with a 2003 proposal briefly observed that "[t]he bill does not change

current law standards used by courts in determining when to utilize an economic

substance analysis," S. Rep. No. 108-11, at 79 (2003), but the text of the bill did not expressly provide for this result.

Commentators responded vociferously to the absence of guardrails within the legislative text that would prevent the conjunctive test from being applied indiscriminately to transactions that had never been subject to the economic substance doctrine. The Tax Section of the American Bar Association expressed concern that the legislation without a threshold relevance test "may be read as implying that the economic substance doctrine applies to every transaction." AM. BAR ASS'N, COMMENTS ON THE PROPOSED CODIFICATION OF THE ECONOMIC SUBSTANCE DOCTRINE, 5 (Apr. 24, 2003). The Tax Section of the New York State Bar Association identified an extensive list of routine transactions that might not satisfy the conjunctive test, but which had long been considered outside the scope of the doctrine by the IRS and the courts, including transactions undertaken to recognize *bona fide* economic gain or loss, transactions to recapitalize a corporation with debt rather than equity, and decisions to undertake investments that would not be profitable without a federal tax credit incentive. *See* N.Y. STATE BAR ASS'N, TAX SECTION, SUMMARY REPORT ON THE PROVISIONS OF RECENT SENATE BILLS THAT WOULD CODIFY THE ECONOMIC SUBSTANCE DOCTRINE, 3, 8 (May 21, 2003).

In response to extensive public feedback, Congress modified the proposed legislative text to specify that the conjunctive test only applies to "a case in which a court determines[.] that the economic substance doctrine is relevant[.]" *See*, *e.g.*, H.R. Rep. No. 108-755, at 666 (Oct. 7, 2004); H.R. Rep. No. 109-455, at 222 (May 9, 2006); S. Rep. No. 109-336, at 138-39 (Sept. 15, 2006). In 2007, Congress further strengthened the relevance standard by: (i) proposing to limit the conjunctive test to "any transaction to which the economic substance doctrine is relevant" and (ii) proposing to include a "special rule" that "[t]he determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection [section 7701(o)] had never been enacted." *See* Tax Reduction and Reform Act of 2007, H.R. 3970, 110th Cong. § 3501 (2007) (as introduced in the House, Oct. 25, 2007).

The addition of the "special rule" in the proposed legislative text was accompanied by a substantial expansion of the discussion of "relevance" in formal legislative history. Starting with a Senate Finance Committee Report published in October 2007, every Congressional report addressing the proposed codification of the economic substance doctrine added the following explanation:

> The provision is not intended to alter the tax treatment of certain basic business transactions that, under longstanding judicial and administrative practice are respected, merely because the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages.

S. Rep. No. 110-206, at 92-93 (Oct. 25, 2007); H.R. Rep. No. 111-299(II), at 291 (2009); H.R. Rep. No. 111-443(I), at 296 (2010); J. Comm. Tax'n, *Technical Explanation of the Revenue Provisions of the "Reconciliation Act of 2010," as amended, in combination with the 'Patient Protection and Affordable Care Act,"* (JCX-18-10), at 152-53 (Mar. 21, 2010). As examples of transactions outside the scope of the conjunctive test, each report listed the choice to capitalize a business enterprise with debt or equity, the choice to utilize a foreign corporation for a foreign investment, the choice to enter into a corporate organization or reorganization, and the choice to transact with a related party. JCX-18-10, at 152-53. The committee reports uniformly stated that these examples are "illustrative and not exclusive." *Id.* at 152.

The evolution of the proposed text, along with the accompanying legislative history, demonstrates that Congress intended for the IRS and the judiciary to give effect to the language on "relevance" added to section 7701(o)(1) and 7701(o)(5)(C) in determining whether to utilize the statute's conjunctive test.

**III.    The District Court's Interpretation Conflicts with the Considered Position of the Agency Charged with Enforcing the Federal Tax Laws**

Shortly after the economic substance doctrine was codified, the IRS acknowledged the threshold relevance test and announced that "[i]f authorities, prior to the enactment of section 7701(o), provided that the economic substance doctrine was not relevant to whether certain tax benefits are allowable, the IRS will

11

continue to take the position that the economic substance doctrine is not relevant to whether those tax benefits are allowable." Notice 2010-62, 2010-40 I.R.B. 411 (Sept. 13, 2010); *see also* Notice 2014-58, 2014-44 I.R.B. 746 (Oct. 27, 2014) (observing that determination of whether economic substance doctrine is relevant is considered on case-by-case basis). While the IRS's position in a notice is not binding on this court, it reflects the understanding of the agency charged with applying section 7701(o), immediately following its enactment.

## IV. The District Court Decision Would Introduce Uncertainty into the Federal Tax Treatment of Transactions Previously Established as Outside the Scope of the Economic Substance Doctrine

In rejecting a threshold relevance test, the district court observed that many economic substance decisions omit discussion of whether the doctrine is relevant. Order on Cross-Motions for Summ. J., at 2-App.287-88. This observation yields less insight than meets the eye. In many cases, the relevance of the economic substance doctrine is obvious. When a taxpayer does not dispute the relevance of the doctrine, the court's analysis necessarily centers on whether the transaction lacked objective economic effect or substantial business purpose. *See*, *e.g.*, *Blum v. Comm'r*, 737 F.3d 1303, 1307 (10th Cir. 2013) (addressing taxpayer assertion that mass-marketed tax shelter presented reasonable probability of pre-tax profit). Thus, for many types of transactions, judicial decisions will either apply the doctrine or not without explicitly analyzing relevance.

12

For transactions clearly outside the scope of the doctrine, often based on judicial decisions rendered decades earlier, the government refrains from asserting the doctrine in the first instance. *See*, *e.g.*, *Interim Guidance Memorandum on Economic Substance Doctrine and Related Penalties*, LB&I-04-0422-0014 (Apr. 22, 2022); *LB&I Directive for Industry Directors, Guidance for Examiners and Managers on the Codified Economic Substance Doctrine and Related Penalties*, LB&I-4-0711-015 (July 15, 2011). Therefore, for many types of transactions outside the scope of the conjunctive test, no recent cases will exist.

For transactions in which relevance is disputed, courts have not historically described their analysis using the "relevance" terminology introduced by section 7701(o). Instead, courts have discussed whether the realization of tax benefits of a transaction is inconsistent with express Congressional purpose or whether the tax benefit at issue is already restricted by a detailed statutory or regulatory scheme. *See Trotz v. Comm'r*, 361 F.2d 927, 929 (10th Cir. 1966) (to determine whether equipment sale was precluded from favorable treatment as capital gain, declining to evaluate whether contractual right to acquire additional stock was "tantamount to" 79% shareholder owning stock in excess of 80% statutory threshold; "nothing in the legislative history … shows a congressional intent to use the word 'owned' as embracing a concept other than legal title"); *Woods Investment Co. v. Comm'r*, 85 T.C. 274, 278-281 (1985) (rejecting basis adjustment that the IRS asserted to

prevent "what [the IRS] perceives to be a 'double deduction,'" because "[t]he consolidated return regulations promulgated pursuant to section 1502 provide a detailed and comprehensive set of rules for adjusting the basis of a subsidiary's stock held by a parent corporation" and "judicial interference … is not warranted to alter" the result under those regulations); IRS Action on Decision 1986-39 (June 30, 1986) (announcing that IRS would refrain from asserting the position in litigation until it revised the applicable regulations), IRS Acquiescence, 1986-2 C.B. 1 (Dec. 31, 1986).

Courts have permitted tax benefits for many types of transactions, even if the taxpayer lacked subjective business purpose, the transaction lacked objective economic effect, or both. Such decisions can only be explained by the existence of a threshold determination of whether the doctrine is relevant, however that threshold test is labeled. In addition to the illustrative list of "basic business transactions" in the legislative history, courts have permitted tax benefits from many different types of transactions, including the types of transactions described below, regardless of whether the transactions met the objective or subjective tests of the economic substance doctrine.

### A.    Transactions to Recognize Economic Gains or Losses for Tax Purposes

Courts have not applied the economic substance doctrine to disallow the federal tax benefit of transactions undertaken for the purpose of recognizing

14

taxable gains and losses, provided the item of income or loss reflected economic reality (no artificial or duplicated losses) and the item was properly attributable to the taxpayer, rather than a third party. In the leading case, *Cottage Savings Association v. Commissioner*, 499 U.S. 554 (1991), mortgage interests held by a financial institution had declined in value during the savings and loan crisis. Solely for the purpose of recognizing an economic loss for tax purposes, the taxpayer exchanged its interest in a group of residential mortgages for an equivalent interest in a group of "substantially identical" mortgages held by other lenders. Although the taxpayer lacked a non-tax business purpose for the exchange, and the exchange did not "substantially affect the economic position" of the taxpayer, the Supreme Court rejected the government's application of "economic substance" principles and permitted the deduction for the *bona fide* losses sustained by the taxpayer. *Id.* at 557, 567-68.

Consistent with the treatment of transactions undertaken to recognize losses, taxpayers are not required to demonstrate a non-tax business purpose to realize income or gain from the sale of property. In *Sun Properties, Inc. v. United States*, 220 F.2d 171 (5th Cir. 1955), the Court of Appeals for the Fifth Circuit determined that a sale of property to a corporation by its sole shareholder was a sale, rather than a contribution to capital. Because the transaction was respected as a sale, the corporation obtained a cost basis in the property, thereby permitting additional

depreciation deductions. Although the sale was undertaken solely for tax purposes, the Court of Appeals concluded that finding a non-tax business purpose was unnecessary, stating that "[n]o cases require that a sale have any business purpose beyond that of realizing a capital gain." 220 F.2d. at 174-75. The Court of Appeals continued:

> [W]e would be most reluctant to impose a court-made requirement of a business purpose independent from taking a gain or loss, in determining the genuineness of sales in general, since it is common knowledge that vast numbers of sales have been made and are still being made for the purpose of taking gains and losses at times which provide the optimum tax benefits.

*Id.* at 175. Similarly, in *Curry v. Commissioner*, 43 T.C. 667, 695 (1965), the Tax Court rejected the relevance of the government's contention that "there was no 'business purpose'" for a sale of property. The court observed, "[i]t would seem that the mere desire to sell, even if the sole purpose was to realize capital gains, should be a sufficient business purpose (assuming always that the substance complies with the form). Indeed, it is difficult to imagine what added business purpose respondent would require for a sale of property." *Id.* (internal citations omitted); *see also Hobby v. Comm'r*, 2 T.C. 980, 985 (1943) ("The primary purpose to realize the gain was a legitimate business purpose, even though it also had a collateral favorable tax effect.").

### B. Transactions to Facilitate Recognition of Taxable Loss on Liquidation of Subsidiary

Consistent with the general treatment of transactions to recognize gains and losses, courts have not applied the economic substance doctrine to disallow the federal tax benefit of corporate liquidations undertaken for the purpose of recognizing taxable losses, as long as the losses reflect economic reality and are properly attributable to the taxpayer.

Under the Internal Revenue Code, whether the liquidation of a corporation triggers the recognition of taxable gain or loss by its shareholder(s) depends on mechanical criteria, including whether the shareholder owned at least 80 percent of the voting power and value of the stock of the liquidating corporation at the time specified in the statute. *See* I.R.C. § 332(b). For decades, courts have respected transactions that reduce a taxpayer's ownership in a subsidiary below that 80 percent threshold, specifically undertaken to allow a shareholder to recognize loss on the subsequent liquidation of that subsidiary under section 331. In the absence of those preparatory transactions, section 332 would prevent the subsequent liquidation from resulting in the shareholder recognizing loss. *See, e.g., Granite Trust Co. v. United States*, 238 F.2d 670 (1st Cir. 1956) (respecting disposition of stock, undertaken for sole purpose of ensuring subsequent liquidation resulted in taxable loss, rather than non-recognition treatment under predecessor to section 332); *Comm'r v. Day & Zimmerman,* 151 F.2d 517 (3d. Cir. 1945) (same); *cf. Avco*

17

*Mfg. Corp. v. Comm'r*, 25 T.C. 975, 980 (1956) (allowing recognition of taxable loss, where company undertook transaction that "was prearranged and timed … for the express purpose of avoiding the nonrecognition provisions of the [predecessor to section 332]"), *aff'd in relevant part*, No. 45633, 1957 WL 10899 (2d Cir. 1957) (approving stipulation of parties that taxpayer recognized loss on liquidation of subsidiary); *cf. Associated Wholesale Grocers, Inc. v. United States*, 927 F.2d 1517 (10th Cir. 1991) (applying step transaction doctrine to disregard a transitory reduction in ownership of a subsidiary but acknowledging that "planning possibilities are evident which may allow a corporation to avoid the application of [the non-recognition rules] of Section 332") (citation omitted).

These decisions flow from the judicial conclusion that Congress intended the rules for liquidations to be "elective in the sense that with advance planning and properly structured transactions, a corporation should be able to render [the nonrecognition rules of] section 332 applicable or inapplicable." *George L. Riggs, Inc. v. Comm'r*, 64 T.C. 474, 489 (1975) (respecting purchase of stock undertaken to ensure that section 332 prevented recognition of gain on a subsequent liquidation). In *George L. Riggs, Inc.*, the Tax Court explained that requiring a non-tax business purpose for transactions undertaken to avoid or satisfy the mechanical tests in section 332 would preclude the electivity intended by Congress: "It would be a logical inconsistency equivalent to a 'Catch-22' to say

18

that a corporation has the power to control the application of this section, but that once the corporation formulates the intent to do so … it has … precluded itself from the section." *Id.* at 489-90; *see also* IRS Action on Decision, 1975 WL 38131 (Sept. 29, 1975) (acknowledging that, in the context of the transaction in *George L. Riggs, Inc.*, "the [Internal Revenue] Service would agree that Code § 332 is elective"); IRS Acquiescence, 1976-2 C.B. 1 (Dec. 31, 1976).

### C.  Tax Elections That Result in Deemed Transactions

In general, courts and the IRS have not applied the economic substance doctrine to statutory or regulatory elections that result in "deemed" transactions, including deemed corporate liquidations. *See*, *e.g.*, Treas. Reg. § 301.7701-3(g)(1) (prescribing "[d]eemed treatment of elective change" in entity classification). For example, the IRS has ruled that a taxpayer may validly elect to change the federal income tax classification of an entity from a corporation to a disregarded entity, for the sole purpose of triggering recognition of a worthless security deduction under section 165(g)(3). Rev. Rul. 2003-125, 2003-2 C.B. 1243 (Dec. 29, 2003). The election results in a deemed liquidation of the corporation for federal income tax purposes, with no consequence other than tax effects, and represents another example of a transaction that has not been subject to the economic substance doctrine where the choice between alternatives is "largely or entirely based on comparative tax advantages." *See* H.R. Rep. No. 111-443(I), at 295-96; *see also*

*Dover Corp. v. Comm'r*, 122 T.C. 324, 351 n.19 (2004) (the entity classification regulations do not require "that the taxpayer have a business purpose for such an election or, indeed, for any election under those regulations").[3]

## V.     Conclusion

Congress preserved the "relevance" threshold when it codified the economic substance doctrine, ensuring that taxpayers retained the ability to undertake certain types of transactions on the basis of comparative tax advantages. Ignoring the "relevance" threshold in section 7701(o) would inject uncertainty into countless routine transactions, including anodyne sales of property and ordinary course tax elections. The NFTC urges the Court to reverse the decision below.

---

[3] In the decision below, the district court opined that "[i]t is absurd to imagine" that a taxpayer would consult outside counsel for a transaction outside the scope of the economic substance doctrine. Order on Cross-Motions for Summ. J., 2-App.293. In none of the cases discussed above have courts considered the absence or presence of outside advisors an appropriate factor in determining whether an economic substance analysis is required.

Respectfully Submitted,


/s/ Rocco Femia
Rocco Femia
Robert J. Kovacev
Jeffrey Tebbs
Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006
Tel: (202) 626-5800

Anne Gordon
National Foreign Trade Council, Inc.
1225 New York Ave., NW
Suite 650B
Washington, DC 20005
Tel: (202) 887-0278

*Counsel for National Foreign Trade Council, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, as calculated by Microsoft Word, it contains 4,534 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(B). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) and Circuit Rule 32(A) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Dated: May 6, 2024                              Respectfully Submitted,

                                                /s/ Rocco Femia
                                                Rocco Femia
                                                Miller & Chevalier Chartered
                                                900 16th Street NW
                                                Washington, DC 20006
                                                Tel: (202) 626-5800

                                                *Counsel for National Foreign Trade Council, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: May 6, 2024                    Respectfully submitted,

                                      /s/ Rocco Femia
                                      Rocco Femia
                                      Miller & Chevalier Chartered
                                      900 16th Street NW
                                      Washington, DC 20006
                                      Tel: (202) 626-5800

                                      *Counsel for National Foreign Trade Council, Inc*