No. 23-1410

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

LIBERTY GLOBAL, INC.,

*Appellant*,

v.

UNITED STATES OF AMERICA,

*Appellee.*

On Appeal from the United States District Court
For the District of Colorado, Hon. R. Brooke Jackson
No. 20-cv-3501

### *AMICUS CURIAE* BRIEF OF
### NATIONAL TAXPAYERS UNION FOUNDATION
### IN SUPPORT OF APPELLANT LIBERTY GLOBAL, INC.
### AND REVERSAL

Tyler Martinez
NATIONAL TAXPAYERS UNION FOUNDATION
122 C Street N.W., Suite #700
Washington, D.C. 20001
703.683.5700
tmartinez@ntu.org

May 7, 2024                    *Counsel for* Amicus Curiae

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTEREST OF *AMICUS CURIAE* ........................................................................ 1

SUMMARY OF THE ARGUMENT ..................................................................... 1

ARGUMENT ........................................................................................................ 3

   I.   THE ECONOMIC SUBSTANCE DOCTRINE MUST BE USED ONLY WHEN RELEVANT AND NARROWLY APPLIED. ........................................ 3

      A.   Courts Need to Make a Threshold Determination that the Economic Substance Doctrine Applies. ..................................................................... 3

      B.   The Rule Articulated by the District Court is as Broad as the Treasury Regulation it Struck in Prior Proceedings in this Case. ........................... 5

CONCLUSION ................................................................................................... 10

CERTIFICATE OF COMPLIANCE ................................................................... 12

CERTIFICATE OF SERVICE ............................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Comm'r*,
 737 F.3d 1303 (10th Cir. 2013) ................................................................................4

*Boulware v. United States*,
 552 U.S. 421 (2008) ..................................................................................................6

*Duke Energy Nat. Gas Corp. v. Comm'r*,
 172 F.3d 1255 (10th Cir. 1999) ................................................................................4

*Gitlitz v. Comm'r*,
 531 U.S. 206 (2001) ..................................................................................................7

*Gregory v. Helvering*,
 293 U.S. 465 (1935) ..............................................................................................4, 6

*Hassett v. Welch*,
 303 U.S. 303 (1938) ..................................................................................................4

*Helvering v. Gregory*,
 69 F.2d 809 (2d Cir. 1934) .....................................................................................10

*Sacks v. Comm'r*,
 69 F.3d 982 (9th Cir. 1995) ......................................................................................8

*Summa Holdings, Inc. v. Comm'r of Int. Rev.*,
 848 F.3d 779 (6th Cir. 2017) .................................................................................10

**Statutes**

26 U.S.C § 170(h) ........................................................................................................8

26 U.S.C. § 1361 *et seq.* ..............................................................................................7

26 U.S.C. § 199A .........................................................................................................2

26 U.S.C. § 47 ..............................................................................................................8

26 U.S.C. § 7701(o) ........................................................................................... 1, 2, 10

26 U.S.C. § 7701(o)(1) .................................................................................... 3

26 U.S.C. § 7701(o)(5)(C) ............................................................................... 4

**Other Authorities**

Alexandra M. Walsh, *Formally Legal, Probably Wrong: Corporate Tax Shelters, Practical Reason and the New Textualism*,
    53 STAN. L. REV. 1541 (2001) ................................................................... 10

Andy Grewal, *When Is the Economic Substance Doctrine 'Relevant' to a Transaction*? (Iowa Legal Studies R. Paper No. 2023-29) (Sep. 2023) ............... 5

Cong. R. Serv., FEDERAL LAND OWNERSHIP: OVERVIEW AND DATA
    (Mar. 3, 2017) ............................................................................................. 8

David P. Hariton, *Sorting Out the Tangle of Economic Substance*,
    52 TAX LAW. 235 (1999) ............................................................................ 10

Int. Rev. Serv., SOI Tax Stats — Individual Noncash Charitable Contributions ..... 8

Int. Rev. Serv., SOI Tax Stats — S Corporation Statistics .................................... 7

Jonathan H. Choi, *The Substantive Canons of Tax Law*,
    72 STAN. L. REV. 195 (2020) ....................................................................... 9

S Corp. Ass'n, LARGE S CORPORATIONS AND THE TAX CUTS AND JOBS ACT: THE ECONOMIC FOOTPRINT OF THE PASS-THROUGH SECTOR AND THE IMPACT OF THE TCJA (Oct., 2019) ......................................................................................... 7

Tess Scharlemann and Eileen van Straelen, American Economic Ass'n, MORE TAX, LESS REFI? THE MORTGAGE INTEREST DEDUCTION AND MONETARY POLICY PASS-THROUGH (Dec. 20 2022) ................................................................... 9

## INTEREST OF *AMICUS CURIAE*

Founded in 1973, the National Taxpayers Union Foundation ("NTUF") is a non-partisan research and educational organization dedicated to showing Americans how taxes, government spending, and regulations affect everyday life. NTUF advances principles of limited government, simple taxation, and transparency on both the state and federal level. NTUF's Taxpayer Defense Center advocates for taxpayers in the courts, produces scholarly analyses, and engages in direct litigation and *amicus curiae* briefs upholding taxpayers' rights and challenging administrative overreach by tax authorities. Accordingly, *Amicus* has an institutional interest in this case. All parties consent to the filing of this brief.[1]

## SUMMARY OF THE ARGUMENT

The Economic Substance Doctrine is a dangerous tool to give the government and thus must be used rarely and only when a threshold determination that it "relevant" to use. Congress recognized the danger when it wrote 26 U.S.C. § 7701(o)—explicitly calling for its use only when the doctrine is "relevant." *See* 26 U.S.C. § 7701(o) ("[i]n the case of any transaction to which the economic substance doctrine is relevant"). Determining how to reconcile pre-enactment case law with

---

[1] *Amicus Curiae* confirms that this brief was not authored in whole or in part by counsel for any party, and no person or entity other than *Amicus* and its counsel made a monetary contribution to the preparation or submission of this brief.

1

the § 7701(o) "relevant" standard is no easy task, but this case affords this Court the opportunity to do so.

This is vitally important, for not only did the District Court reject a threshold determination of relevancy, its gloss on § 7701(o) holds that merely seeking "tax benefits" is enough for a court to set aside a transaction as lacking economic substance. *See*, *e.g.*, Add.16. Not only is seeking tax-advantageous results perfectly proper under long-established case law, Congress uses tax incentives to engineer economic outcomes. For example, Congress favors small businesses with the 26 U.S.C. § 199A deduction, encourages environmental and historical investments with tax benefits, and promotes home buying with significant tax advantages via the mortgage interest deduction. That a taxpayer engages in many of these activities precisely because they provide tax benefits does not mean they lack economic substance.

This case gives this Court the opportunity to articulate a relevance standard for applying § 7701(o). It also gives the chance to correct a grave error in the District Court's application of § 7701(o) that would invite government second-guessing any transaction undertaken for a tax benefit. *Amicus* therefore asks the decision below be reversed and remanded with instructions to make a threshold inquiry of relevance of the doctrine and applying a narrower test.

# ARGUMENT

## I. THE ECONOMIC SUBSTANCE DOCTRINE MUST BE USED ONLY WHEN RELEVANT AND NARROWLY APPLIED.

### A. Courts Need to Make a Threshold Determination that the Economic Substance Doctrine Applies.

Recognizing "the risk of tautology," the District Court below rejected any threshold enquiry on whether § 7701(o) is "relevant" and instead held "that the economic substance doctrine applies when a transaction lacks economic substance." Add.9. Not only is the reasoning circular, it opens the door for a judge—or the IRS using the District Court's formulation—to substitute the government's preferred business decisions for that of the company.

Under the two elements of 26 U.S.C. § 7701(o)(1), a transaction has economic substance only when the transaction meaningfully changes the taxpayer's economic position, and when the transaction is supported by substantial nontax purpose. But, in the abstract, much financial planning would trigger the economic substance doctrine. A threshold test—relevance—is necessary that the exception does not subsume the rule. The statute itself demands it. *See id*. ("*In the case of any transaction to which the economic substance doctrine is relevant*, such transaction shall be treated as having economic substance only if…" the two elements are met) (emphasis added). While Congress did not define relevance, it did require it: "The determination of whether the economic substance doctrine is relevant to a

3

transaction shall be made in the same manner as if this subsection had never been enacted." 26 U.S.C. § 7701(o)(5)(C).

This Court should therefore declare that the § 7701(o) relevancy test is required, and direct what it is for this Circuit.[2] Judge Jackson in the decision below held that such relevancy tests are not required. Add.8 ("[T]he conclusion that there is no threshold 'relevance' inquiry that precedes the inquiry described in the operative clause—is consistent with the interpretations of the Supreme Court and courts in the Tenth Circuit"). The court below relied on this Court's decision in *Blum v. Commissioner*, 737 F.3d 1303 (10th Cir. 2013),[3] an opinion Judge Jackson himself wrote while sitting by designation. *See* Add.8 (applying *Blum*); *Blum*, 737 F.3d at 1309 (not applying a relevancy test). Without a relevancy inquiry, the economic substance doctrine will be applied to any of the hundreds of tax-advantaged

---

[2] If this Court finds § 7701(o)'s "relevant" provision ambiguous, it should err on the side of providing more due process to the taxpayer, for this Circuit applies the "well-established method[] of interpreting revenue statutes" under which "doubt should be resolved in favor of the taxpayer." *Duke Energy Nat. Gas Corp. v. Comm'r*, 172 F.3d 1255, 1260 n.7 (10th Cir. 1999) (quoting *Hassett v. Welch*, 303 U.S. 303, 314 (1938)).

[3] There is no citation to a Supreme Court decision in that paragraph of the District Court opinion, *id.*, and the next paragraphs' "see" cite to *Gregory v. Helvering*, 293 U.S. 465, 467 (1935) is only describing the economic substance doctrine, not a threshold relevancy inquiry in *Gregory*. The District Court thus really only relies on *Blum*.

4

provisions in the Internal Revenue Code in a manner that substitutes the government's judgments in place of the citizens' decisions. *See* Section I(B), *infra*.

Relevancy must be more than whenever the government raises the issue or a judge thinks a transaction does not pass a subjective "smell test." Litigation aiming to do so has not yet produced a workable definition. *See*, *e.g.*, Andy Grewal, *When Is the Economic Substance Doctrine 'Relevant' to a Transaction*? 13–14 (Iowa Legal Studies R. Paper No. 2023-29) (Sep. 2023)[4] (describing lack of test); *id*. at 20 ("A judicial attempt to provide an answer [to how to formulate a test under §7701(o)] seems doomed to failure."). At a minimum, this Court should reverse the lower court for skipping the relevancy step. *Amicus* suggests a modest approach: presuming economic substance is satisfied in business transactions unless and until there is clear evidence that the taxpayer attempted to avoid paying taxes at all. Only then should a court begin to apply the factors of §7701(o). Mere corporate reorganization in response to a major tax change like the Tax Cuts and Jobs Act is not enough to say that the reorganization lacks economic substance.

### B. The Rule Articulated by the District Court is as Broad as the Treasury Regulation it Struck in Prior Proceedings in this Case.

Even if the District Court had applied a relevance test, the decision below still creates problems because its gloss on the §7701 factors are too broad. In the decision

---

[4] *Available at*: https://dx.doi.org/10.2139/ssrn.4193230.

5

below, the District Court applied the two-prong test of § 7701(o). *See* Add.16. Most troubling was the formulation that economic substance doctrine applied because Liberty Global's "intent… was to obtain tax benefits." Add.19. Later in the same paragraph the District Court calls Liberty Global's transactions "an artifice for tax benefits." *Id*. Indeed, the District Court even admitted that it would find scheme lacked economic substance "even if an isolated step *did* provide objective benefits to LGI." *Id*. (emphasis in original). This is a very broad application of a doctrine because "getting tax benefits" is the carrot Congress created to encourage certain types of economic activities.

Of course, it is black letter law that taxpayers are legally permitted to structure their business transactions in a manner that produces the least amount of tax. As recently as 2008, the Supreme Court recognized that it has long been the rule that a taxpayer holds the "'legal right… to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits.'" *Boulware v. United States*, 552 U.S. 421, 429 n.7 (2008) (quoting *Gregory v. Helvering*, 293 U.S. 465, 469 (1935)). But beyond mere tax minimization, the Internal Revenue Code offers many reasons for a person or entity to act or structure their dealings in ways that are tax advantageous.

Many statutory tax provisions invite taxpayers to engage in transactions principally or solely for their tax reasons. For example, a business may elect to file

6

as an S corporation rather than as a C corporation, based entirely upon the tax benefits. S-corporations, defined and regulated at 26 U.S.C. § 1361 *et seq.*, allows shareholders to elect to pass through taxation to the shareholders, thus eliminating double taxation and a possibly lower rate based on an individual's tax bracket. *See, e.g.*, *Gitlitz v. Comm'r*, 531 U.S. 206, 208 (2001) (describing benefits of S corporation election). These benefits are so significant that, since 1997, S corporations have continued to be the most common type of corporate tax status. Int. Rev. Serv., SOI Tax Stats — S Corporation Statistics.[5] And S corporations provide a major component of the American economy. S Corp. Ass'n, LARGE S CORPORATIONS AND THE TAX CUTS AND JOBS ACT: THE ECONOMIC FOOTPRINT OF THE PASS-THROUGH SECTOR AND THE IMPACT OF THE TCJA at i (Oct., 2019)[6] (S Corporations "employ a majority of private sector workers (58%), and pay a significant share of all business taxes (51%)"). All of this is made possible by the choice to take the favorable tax status of the S corporation.

Tax status is by no means the only way the Internal Revenue Code shapes and changes society. Congress sometimes creates tax incentives to stimulate activity that

---

[5] *Available at*: https://www.irs.gov/statistics/soi-tax-stats-s-corporation-statistics#basictables.

[6] *Available at* https://s-corp.org/wp-content/uploads/2019/10/EY-S-Corporation-Association-report-Economic-footprint-and-impact-of-TCJA-on-large-S-corporations-October-2019.pdf.

would otherwise go underserved. For example, historic rehabilitation credits attract investors to preserve historic buildings that might otherwise be demolished or allowed to deteriorate. *See* 26 U.S.C. § 47. Likewise renewable energy credits are designed to attract investment in new energy technologies. *See*, *e.g.*, *Sacks v. Comm'r*, 69 F.3d 982, 984 (9th Cir. 1995) (describing history of the 1970s oil crises and Congress' attempts to spur investment in non-fossil-fuel alternatives). Similarly, Congress provided that a tax deduction for conservation-related charitable contributions, 26 U.S.C § 170(h), which created a bargain for the government. Approximately $2 billion to $9 billion each year is deducted from conservation easements on real estate, compared to the almost $19 billion spent on managing public lands. *See*, *e.g.*, Int. Rev. Serv., SOI Tax Stats — Individual Noncash Charitable Contributions (collecting data by tax year);[7] Cong. R. Serv., FEDERAL LAND OWNERSHIP: OVERVIEW AND DATA 22 (Mar. 3, 2017)[8] (estimating $18.6 billion maintenance backlog for the National Park Service, Bureau of Land Management, Fish and Wildlife Service, and Forest Service).

For individuals, the mortgage interest deduction encourages home ownership and effects how and when families refinance their home loans. *See generally* Tess

---

[7] *Available at*: https://www.irs.gov/statistics/soi-tax-stats-individual-noncash-charitable-contributions.

[8] *Available at:* https://crsreports.congress.gov/product/pdf/R/R42346/15.

Scharlemann and Eileen van Straelen, American Economic Ass'n, MORE TAX, LESS REFI? THE MORTGAGE INTEREST DEDUCTION AND MONETARY POLICY PASS-THROUGH 30–31 (Dec. 20 2022)[9] (concluding that the impact of the Tax Cuts and Jobs Act expansion of the standard deduction resulted in the less frequent use of the mortgage interest deduction that "cannot be explained by other factors that drive refinancing, like pre-tax refinance savings"). Even moving money from a brokerage account into a tax-favored Roth retirement account could fail both elements of § 7701(o)—after all, the move was done *precisely* for the tax benefit and there is no profit at the end of the deal because the same amount of savings remains.

Many other examples could be found by looking at the ever-complex Internal Revenue Code. But "[t]o apply the economic substance doctrine," in such instances, "would be poor policy" that thwarts the designs of Congress. Jonathan H. Choi, *The Substantive Canons of Tax Law*, 72 STAN. L. REV. 195, 203–04 (2020). Yet under the test articulated by the court below, being "technically correct" will not be enough to protect a taxpayer. Instead, the taxpayer must both be correct *and* convince the judge that there was a "substantial" reason for doing so was something beyond mere tax savings. *See* Add.19. This invariably favors the government. Indeed, the "economic substance doctrine usually produces a result that is inconsistent with the

---

[9] *Available at*: https://www.aeaweb.org/conference/2023/program/paper/Skh8KZEs.

9

text of the tax code" which "raises concerns about predictability and determinacy" in the revenue laws. Alexandra M. Walsh, *Formally Legal, Probably Wrong: Corporate Tax Shelters, Practical Reason and the New Textualism*, 53 STAN. L. REV. 1541, 1560 (2001). The economic substance doctrine should therefore be sparingly used and applied narrowly.

As the Sixth Circuit asked rhetorically, "[W]ho is to say that a low-tax means of achieving a legitimate business end is any less 'substantive' than the higher-taxed alternative?" *Summa Holdings, Inc. v. Comm'r of Int. Rev.*, 848 F.3d 779, 787 (6th Cir. 2017). That is why the *Summa Holdings* court held that if the Code "authorizes the 'formal' transactions the taxpayer entered into, then 'it is of no consequence that it was all an elaborate scheme to get rid of income taxes.'" *Id.* (quoting *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934) and also citing David P. Hariton, *Sorting Out the Tangle of Economic Substance*, 52 TAX LAW. 235, 236–41 (1999)). Judges should be wary of placing themselves in the seat of the taxpayer making choices Congress allowed.

## CONCLUSION

For the foregoing reason, *Amicus Curiae* urges this Court to reverse the decision below and remand with instructions to apply a relevance test before invoking 26 U.S.C. § 7701(o) and, if relevant, using a narrower application of the economic substance doctrine.

Respectfully submitted,

/s/ Tyler Martinez
Tyler Martinez
NATIONAL TAXPAYERS UNION FOUNDATION
122 C St. N.W., Ste. #700
Washington, D.C. 20001
(703) 683-5700
tmartinez@ntu.org

Dated: May 7, 2024                  *Counsel for* Amicus Curiae

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) and 29(a)(5) because this brief contains 2,303 words, as counted by Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14-point font.

/s/ Tyler Martinez  
Tyler Martinez  
NATIONAL TAXPAYERS UNION FOUNDATION

Dated: May 7, 2024

*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing *Amicus Curiae* Brief of National Taxpayers Union Foundation in Support of Appellant Liberty Global, Inc. and Reversal using the court's CM/ECF system. A Notice of Docket Activity will be emailed to all registered attorneys currently participating in this case, constituting service on those attorneys:

                                                    /s/ Tyler Martinez
                                                    Tyler Martinez
                                                    NATIONAL TAXPAYERS UNION FOUNDATION

Dated: May 7, 2024                            *Counsel for* Amicus Curiae