No. 23-1410

_____

In the
United States Court of Appeals
for the Tenth Circuit

_____

LIBERTY GLOBAL, INC.,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the District of Colorado, Case No. 1:20-cv-03501-RBJ,
Hon. R. Brooke Jackson, *United States Senior District Judge*

_____

**BRIEF OF ALLIANCE FOR BUSINESS PARTNERSHIPS AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY**

_____

George M. Clarke III
Joseph B. Judkins
Joy A. Williamson
Carlton A. Tarpley
David M. Brotz
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 452-7000
*Counsel for Alliance for Business Partnerships*

# TABLE OF CONTENTS

Interest of Amicus Curiae ........................................................................1

Summary of Argument ............................................................................2

Argument ...............................................................................................5

I.  The Economic-Substance Doctrine Is Not Relevant to a Taxpayer's Choice Among Options the Code Otherwise Allows. ...................................6

II.  Statutory Text Determines When the Doctrine Is—and Is Not—Relevant. ................................................................10

    A.  If the Statute Expressly Provides the Tax Benefit, the Economic-Substance Doctrine Is Not Relevant. ...................................10

    B.  The Economic-Substance Doctrine Is Not Made Relevant by What Congress Does or Might Do in the Future. ...........................12

    C.  If the Statute Is an Anti-Abuse or Anti-Avoidance Test, the Economic-Substance Doctrine Cannot Override that Congressional Rule .................................................................13

    D.  If the Statute Includes a Term that Requires an Economic Inquiry, the Economic-Substance Doctrine May Be Relevant. .......................16

III.  The Economic-Substance Doctrine Does Not Depend on Subjective Notions of Legislative "Intent." .............................................22

Conclusion ...........................................................................................27

Certificate of Compliance ......................................................................29

Certificate of Digital Submission ...........................................................30

Certificate of Service .............................................................................31

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Blum v. Commissioner*,
    737 F.3d 1303 (10th Cir. 2013) ........................................................22

*Bohrer v. Commissioner*,
    945 F.2d 344 (10th Cir. 1991) ...................................................19, 22

*Boone v. United States*,
    470 F.2d 232 (10th Cir. 1972) ........................................................24

*Bostock v. Clayton County*,
    590 U.S. 644 (2020)........................................................................24

*Boulware v. United States*,
    552 U.S. 421 (2008)........................................................................24

*Canaveral Int'l Corp. v. Commissioner*,
    61 T.C. 520 (1974)..........................................................................14

*Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co.*,
    417 U.S. 134 (1974)..........................................................................9

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992)..........................................................................5

*Cooper Industries, Inc. v. Aviall Services, Inc.*,
    543 U.S. 157 (2004)........................................................................15

*Cross Refined Coal, LLC v. Commissioner*,
    45 F.4th 150 (D.C. Cir. 2022)................................................3, 10, 11

*Dover Corp. & Subsidiaries v. Commissioner*,
    122 T.C. 324 (2004)..........................................................................8

*Flextronics America, LLC v. Commissioner*,
    2010 Tax Ct. Memo. LEXIS 282 (Nov. 8, 2010)..............................12

*Frank Lyon Co. v. United States*,
    435 U.S. 561 (1978)......................................................................................18, 19

*Gilbert v. Commissioner*,
    248 F.2d 399 (2d Cir. 1957) .......................................................................23

*Gitlitz v. Commissioner*,
    182 F.3d 1143 (10th Cir. 1999) .............................................................25, 26

*Gitlitz v. Commissioner*,
    531 U.S. 206 (2001)..............................................................3, 12, 24, 25, 26

*Gregory v. Helvering*,
    293 U.S. 465 (1935)........................................................2, 5, 6, 13, 17, 26

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)..........................................................................................5

*Helvering v. Gregory*,
    69 F.2d 809 (2d Cir. 1934) ....................................................................6, 17

*Higgins v. Smith*,
    308 U.S. 473 (1940)........................................................................................13

*Jackson v. Commissioner*,
    966 F.2d 598 (10th Cir. 1992) ...............................................................16

*James v. Commissioner*,
    899 F.2d 905 (10th Cir. 1990) ...............................................................22

*Keeler v. Commissioner*,
    243 F.3d 1212 (10th Cir. 2001) ..............................................................19

*Knetsch v. United States*,
    364 U.S. 361 (1960)................................................................17, 18, 21

*Liberty Global, Inc. v. United States*,
    2023 U.S. Dist. LEXIS 209613 (D. Colo. Oct. 31, 2023)................................22

*Magwood v. Patterson*,
    561 U.S. 320 (2010).........................................................................................23

*Mayo Foundation for Medical Ed. & Research v. United States*,
    562 U.S. 44 (2010) ............................................................... 23

*Nickeson v. Commissioner*,
    962 F.2d 973 (10th Cir. 1992) ........................................... 20

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) .............................................................. 2

*Oklahoma v. Castro-Huerta*,
    597 U.S. 629 (2022) ............................................................ 23

*Olsen v. Commissioner*,
    52 F.4th 889 (10th Cir. 2022) ............................... 11, 12, 20

*Philadelphia & Reading Corp. v. United States*,
    944 F.2d 1063 (3d Cir. 1991) ............................................... 4

*Rogers v. United States*,
    281 F.3d 18 (10th Cir. 2002) ........................................ 15, 16

*Ross v. Blake*,
    578 U.S. 632 (2016) .............................................................. 2

*Russello v. United States*,
    464 U.S. 16 (1983) .............................................................. 15

*Sacks v. Commissioner*,
    69 F.3d 982 (9th Cir. 1995) ............................................... 11

*Sala v. United States*,
    613 F.3d 1249 (10th Cir. 2010) ......................................... 22

*Santander Holdings USA, Inc. v. United States*,
    844 F.3d 15 (1st Cir. 2016) ................................................. 5

*Siegel v. Commissioner*,
    45 T.C. 566 (1966) ............................................................... 9

*Summa Holdings, Inc. v. Commissioner*,
    848 F.3d 779 (6th Cir. 2017) ................................. 5, 10, 26

iv

*Trans City Life Ins. Co. v. Commissioner*,
  106 T.C. 274 (1996) ........................................................................... 14

*United Parcel Serv. of Am., Inc. v. Commissioner*,
  254 F.3d 1014 (11th Cir. 2001) ............................................................ 8

*United States v. Cumberland Public Serv. Co.*,
  338 U.S. 451 (1950) ...................................................................... 3, 24

*United States v. Goldenberg*,
  168 U.S. 95 (1897) ............................................................................ 23

*United States v. Isham*,
  84 U.S. 496 (1873) ......................................................................... 6, 7

*United States v. Klinger*,
  199 F.2d 645 (2d Cir. 1952) ............................................................. 23

*Veritas Software Corp. v. Commissioner*,
  133 T.C. 297 (2009) .......................................................................... 12

*Webb v. Commissioner*,
  67 T.C. 293 (1976) ............................................................................ 14

*West Virginia Univ. Hospitals, Inc. v. Casey*,
  499 U.S. 83 (1991) ............................................................................ 27

**Federal Statutes**

26 U.S.C. § 1 et seq. ............................................................................. 1

26 U.S.C. § 23(b) ................................................................................ 17

26 U.S.C. § 48 ..................................................................................... 11

26 U.S.C. § 162(e) .............................................................................. 14

26 U.S.C. § 163(a) ......................................................................... 17, 18

26 U.S.C. § 165 .................................................................................. 19

26 U.S.C. § 165(c) .............................................................................. 19

26 U.S.C. § 167 .................................................................................. 20

26 U.S.C. § 167(a) ..................................................................................11

26 U.S.C. § 170(f)(9) .............................................................................14

26 U.S.C. § 174 ......................................................................................20

26 U.S.C. § 269(a) ............................................................................13, 14

26 U.S.C. § 301 ......................................................................................14

26 U.S.C. § 302 ......................................................................................14

26 U.S.C. § 303 ......................................................................................14

26 U.S.C. § 304 ......................................................................................14

26 U.S.C. §§ 351-368 (Subchapter C) ......................................................9

26 U.S.C. § 355(a)(1)(D) ........................................................................13

26 U.S.C. § 482 ........................................................................................9

26 U.S.C. § 532 ........................................................................................7

26 U.S.C. § 845(b) .................................................................................14

26 U.S.C. § 7701(o) ........................................... 1, 2, 4, 5, 9, 12, 15, 16, 27

26 U.S.C. § 7701(o)(1)..............................................................................5

26 U.S.C. § 7701(o)(1)(A) ......................................................................21

26 U.S.C. § 7701(o)(1)(B) ......................................................................21

26 U.S.C. § 7701(o)(5)(A) ......................................................................16

26 U.S.C. § 7701(o)(5)(C) ........................................................................6

**Rules and Regulations**

Treas. Reg. § 301.7701-1 et seq..................................................................8

**Other Authorities**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal
Texts (2012) ..................................................................................................5

H.R. Rep. No. 107-251 (2001)....................................................................26

H.R. Rep. No. 111-443 (2010)................................................................9, 12

## INTEREST OF *AMICUS CURIAE*[1]

The Alliance for Business Partnerships represents the interests of American family farms, small businesses, and other enterprises that are made possible through partnerships. These financial arrangements help form the foundation of America's economy, allowing individuals to pool resources and capital in order to turn ideas into jobs and economic growth. The Alliance and its members depend on tax certainty and the ability to understand and apply the law as written. A clear statement of the metes and bounds of the economic-substance doctrine—when it applies and when it doesn't—is integral to tax certainty. Section 7701(o),[2] which codifies the economic-substance doctrine, opens with a crucial threshold relevancy requirement. The Alliance submits this brief to help inform this Court's analysis of that relevancy requirement in order to bring clarity to a point of law that is sometimes overlooked.

---

[1] All parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part. No party or a party's counsel contributed money intended to fund the preparation or submission of this brief. No person other than Amicus Curiae, its members, or its counsel made a monetary contribution to its preparation or submission.

[2] Unless otherwise noted, all "section" references are to the Internal Revenue Code of 1986 ("Code"), as amended (26 U.S.C.), and to all Treasury Regulations ("Treas. Reg.") issued thereunder (26 C.F.R.). All "regulations" references are to the Treasury Regulations.

## SUMMARY OF ARGUMENT

Words matter. They're "how the law constrains power." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). Section 7701(o) includes a threshold constraint on the application of the economic-substance doctrine, which applies only to transactions to which it is "relevant." The statute doesn't define relevance, but case law identifies foundational principles that circumscribe the inquiry.

First, the doctrine is never relevant to a taxpayer's choice among options that the Code otherwise allows. From the doctrine's inception, the Supreme Court made clear that it "cannot be doubted" that the taxpayer has the "legal right" to decrease the amount of … his taxes, or altogether avoid them, by means which the law permits." *Gregory v. Helvering*, 293 U.S. 465, 469 (1935). It follows that the choice between two legally permissible alternatives—such as operating a business through a partnership rather than a corporation, or capitalizing a business through the issuance of debt rather than equity—is not now and has never been subject to the economic-substance doctrine.

Second, the text of the statute applicable to the transaction at issue determines when the doctrine is—and is not—relevant. "Statutory interpretation … always … begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The language of the statute may compel a particular tax outcome without inquiry into economics or purpose or it may make that inquiry relevant. This is why statutory text is paramount

2

in any relevancy inquiry. This principle manifests in various ways. For one, Congress routinely uses the Code to incentivize particular behavior without regard to the economics of the transaction. *See, e.g.*, *Cross Refined Coal, LLC v. Commissioner*, 45 F.4th 150 (D.C. Cir. 2022) (credit to encourage production of cleaner-burning coal). In those instances, Congress occupies the field through the policy choice that it incorporated into the statute, and the economic-substance doctrine is not relevant and cannot override that clear legislative policy choice. For another, whether the doctrine is relevant is determined by the law in effect at the time of the transaction—it is not and cannot be made relevant by law Congress enacts or might enact in the future. After all, taxpayers need only be compliant, not prescient. In yet another, Congress sometimes includes economic terms in tax statutes, addressing concepts such as "for profit" or "indebtedness" or the like. If the statutory term at issue incorporates an economic concept, then the economic-substance doctrine may be relevant to determine the consequences of the transaction.

Third, the economic-substance doctrine is not relevant merely because applying the Code's plain language triggers a tax consequence that the government or a court might consider too beneficial based on subjective (and shifting) notions of legislative intent. *See Gitlitz v. Commissioner*, 531 U.S. 206, 219-20 (2001) (permitting double tax benefit dictated by the statute); *United States v. Cumberland Public Serv. Co.*, 338 U.S. 451 (1950) (permitting tax benefit where tax

3

consequences were mandated by Congress). Instead, the text of tax statutes embodies Congress's intent, and giving effect to that precise language is the best way to achieve that intent. *See Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063, 1074 (3d Cir. 1991) ("The precision and complexity of our tax laws … bespeak Congress's intent to keep the Article III judiciary out of the administration of the tax code except to enforce and monitor the precise rules Congress has written … .").

These principles undergird the section 7701(o) relevancy requirement and provide courts with a compass for navigating the economic-substance doctrine's sometimes murky terrain. By respecting taxpayer choice among legally permissible options, and by giving effect to the Code's detailed and precise language, this framework provides courts, taxpayers, and the government with clarity about the scope and application of the economic-substance doctrine, thereby bringing certainty to one of the areas of the law that needs it most—the tax law—and allowing taxpayers to engage in business transactions with full and fair knowledge of the expected tax consequences.

## ARGUMENT

In the tax law, as in every other statute-based regime, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Because the "ordinary meaning of [statutory] language accurately expresses the legislative purpose," (*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)), "[t]he best way to effectuate Congress's nuanced policy judgments is to apply each provision as its text requires ... ." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 789-90 (6th Cir. 2017). The tools of statutory interpretation are well-known and commonly applied. *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012). The common-law economic-substance doctrine is one such tool that courts have used to evaluate "whether what was done, apart from the tax motive, was the thing which the statute intended." *Gregory*, 293 U.S. at 469.[3]

In 2010, Congress codified some rules for applying the economic-substance doctrine in section 7701(o). That statute begins with a relevancy requirement: the doctrine applies only to a transaction "to which the economic substance doctrine is relevant … ." Section 7701(o)(1) (flush language). Congress couldn't have been

---

[3] *See also Santander Holdings USA, Inc. v. United States*, 844 F.3d 15, 21 (1st Cir. 2016) ("The federal income tax is, and always has been, based on statute. The economic substance doctrine … can thus perhaps best be thought of as a tool of statutory interpretation[.]").

clearer that courts must determine relevance by looking to common law, explicitly providing that "[t]he determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection had never been enacted." Section 7701(o)(5)(C). Precedent identifies three foundational principles for the relevancy requirement.

## I.     The Economic-Substance Doctrine Is Not Relevant to a Taxpayer's Choice Among Options the Code Otherwise Allows.

Courts often trace the origin of the economic-substance doctrine to *Gregory v. Helvering*, 293 U.S. 465 (1935). There, the Court rested its substance-based inquiry on the bedrock proposition that "[t]he legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." *Id.* at 469. The "legal right" to "decrease" or "avoid" taxes inheres in every transaction that the "law permits." *Id.* Identifying what the law permits involves a close analysis of statutory text—here, to determine what actions are and are not subject to tax. If the law permits two different options for a transaction, then the taxpayer "may so arrange his affairs that his taxes shall be as low as possible; *he is not bound to choose that pattern which will best pay the Treasury … .*" *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934) (Hand, J.) (emphasis added), *aff'd*, 293 U.S. 465 (1935).

The foundational principle of tax choice is more than 150 years old. The Supreme Court articulated this principle in *United States v. Isham*, 84 U.S. 496

6

(1873), which involved the imposition of the stamp tax on a draft or check. The Court provided an example to describe a taxpayer's ability to minimize tax by choosing to enter into transactions that avoided the tax. Specifically, the Stamp Act imposed a duty of 2¢ upon a bank-check in the amount of $20 or more. The Court concluded that if an individual owed a creditor $20, he could pay his debt by issuing two checks of $10 each. "He thus draws checks in payment of his debt to the amount of twenty dollars, and yet pays no stamp duty." *Id.* at 506. The individual "resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of payment, and thus to avoid the tax." *Id.* This example shows that the taxpayer may choose to make a payment in a form that minimizes his tax because the plain language of the tax law doesn't prohibit that payment.

The Code and regulations contain myriad choices, none of which are subject to the economic-substance doctrine unless the statutory text makes them so. As but one, the doctrine isn't relevant to the choice of whether to operate a business through a partnership or a corporation.[4] Indeed, the tax regulations expressly allow taxpayers to choose the form of their business, regardless of tax motivations. Specifically,

---

[4] If Congress sees the potential for abuse with respect to use of a particular form of business, Congress enacts specific rules to combat that particular abuse. *See, e.g.*, section 532 (applying the accumulated earnings tax "to every corporation … formed or availed of for the purpose of avoiding the income tax … by permitting earnings and profits to accumulate instead of being divided or distributed.").

taxpayers may elect the type of entity they want for U.S. federal income tax purposes by checking a box on IRS Form 8832 (the "check-the-box" regulations). *See* Treas. Reg. § 301.7701-1 et seq. Courts recognize that this election is purely tax-motivated (it has to be, there is no non-tax effect). Consequently, the regulations don't "require that the taxpayer have a business purpose for such an election or, indeed, for any election under those regulations." *Dover Corp. & Subsidiaries v. Commissioner*, 122 T.C. 324, 351 n.19 (2004) (citing Treas. Reg. § 301.7701-3(a)).

Similarly, the doctrine isn't relevant to the choice of whether to capitalize a business through debt or equity.[5]  To our knowledge, the Code doesn't contain any provision that always requires the taxpayer to issue debt instead of equity. Instead, the Code contemplates that a taxpayer may fund its business operations through either debt or equity, and once that choice is made, the taxpayer must apply the consequences set forth in Code. The Supreme Court made this exact point fifty years ago: "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might

---

[5] *See United Parcel Serv. of Am., Inc. v. Commissioner*, 254 F.3d 1014, 1019 (11th Cir. 2001) ("There may be no tax-independent reason for a taxpayer to choose between these different ways of financing the business [i.e., through debt or equity], but it does not mean that the taxpayer lacks a 'business purpose.' To conclude otherwise would prohibit tax-planning.").

8

have chosen to follow but did not." *Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) (citation omitted).

Congress recognized this basic principle of taxpayer choice in the legislative history to section 7701(o), which identifies multiple examples of choices to which the economic-substance doctrine is simply not relevant. H.R. Rep. No. 111-443, at 296 (2010). In addition to those identified above, the legislative history also addresses the choice between using a foreign corporation or a domestic corporation to make a foreign investment;[6] the choice to enter a transaction or series of transactions that constitute a corporate organization or reorganization under subchapter C;[7] and the choice to use a related-party entity in a transaction, provided that the arm's-length standard of section 482 and other applicable concepts are satisfied. H.R. Rep. No. 111-443, at 296 (citations omitted).

In short, longstanding Supreme Court case law and Congress's own statements show that the economic-substance doctrine isn't relevant to a taxpayer's choice among lawful alternatives. To be sure, the taxpayer is bound by that choice

---

[6] *See Siegel v. Commissioner*, 45 T.C. 566 (1966) (court's inquiry not clouded by the use of a foreign corporation, rather than a domestic corporation, as that choice was permitted).

[7] Part III of Subchapter C of the Code is titled "Corporate Organizations and Reorganizations" and includes sections 351-368, which address shareholder contributions to corporations and exchanges of stock and securities in certain reorganizations.

and must take the tax benefits together with the tax burdens that follow from that choice. But unless the statute specifies otherwise, the government cannot invoke the economic-substance doctrine to override the taxpayer's choice.

## II.    Statutory Text Determines When the Doctrine Is—and Is Not—Relevant.

Precise statutory text drives the precise operation of the federal income tax. As the Sixth Circuit has explained, "if there is one title of the United States Code most deserving of attention to text, it is Title 26." *Summa Holdings*, 848 F.3d at 789. The Code is detailed and precise, not vague or rife with ambiguity. "This is the highly reticulated Internal Revenue Code, which uses language, lots of language, with nearly mathematic precision." *Id.*

Accordingly, the operative statutory text circumscribes the economic-substance doctrine's relevancy requirement, and the doctrine isn't relevant when the statute: (1) expressly provides for the tax benefit at issue; (2) requires the particular tax outcome; or (3) is itself an independent anti-abuse or anti-avoidance test. But if the statutory language allows room for the doctrine's application, then the economic-substance doctrine may be relevant.

### A.    If the Statute Expressly Provides the Tax Benefit, the Economic-Substance Doctrine Is Not Relevant.

Congress routinely uses the Code to incentivize certain behavior. As the D.C. Circuit explained in *Cross Refined Coal*, the economic-substance doctrine was not relevant because "Congress recognized the environmental benefits of cleaner coal

and provided tax incentives that it deemed appropriate as a result" and the court accordingly could not "ignore tax consequences in assessing the legitimacy of the encouraged activity." 45 F.4th at 160-161. The Ninth Circuit underscored this principle in *Sacks v. Commissioner*, 69 F.3d 982 (9th Cir. 1995): Congress provided a tax benefit "for alternative energy investments … to induce investments which otherwise would not have been made." *Id.* at 992. "If the government treats tax-advantaged transactions as shams unless they make economic sense on a pre-tax basis, then it takes away with the executive hand what it gives with the legislative." *Id.*

Carefully applying the relevancy requirement thus leaves the statute to operate by its terms to achieve Congress's policy objectives. And even if the doctrine isn't relevant because the statute provides some benefit, the taxpayer still must satisfy the statutory elements to obtain the tax benefit. For example, in *Olsen v. Commissioner*, 52 F.4th 889 (10th Cir. 2022), this Court considered whether an individual taxpayer that engaged in a sale-and-leaseback transaction related to solar energy was entitled to depreciation deductions under section 167(a) and energy credits under section 48. Section 167(a) required the taxpayer to show that the property was either used in its trade or business or held for the production of income. But the taxpayer couldn't demonstrate a profit motive, even when tax credits were accounted for, so this Court denied the depreciation deduction for failing that statutory requirement (and not on

11

the basis of the economic-substance doctrine). *Id.* at 896-904. The denial of the energy credits followed directly from this conclusion because the grant of credits depended on the allowance of depreciation.

In addition, in the legislative history to section 7701(o), Congress pointed out that the economic-substance doctrine is not relevant if the tax benefits of a transaction follow from the plain language of the Code: "If the tax benefits are clearly consistent with all applicable provisions of the Code and the purposes of such provisions, it is not intended that such tax benefits be disallowed if the only reason for such disallowance is that the transaction fails the economic substance doctrine as defined in this provision." H.R. Rep. No. 111-443, at 296.

### B. The Economic-Substance Doctrine Is Not Made Relevant by What Congress Does or Might Do in the Future.

If the statute in effect at the time of the transaction compels the particular tax outcome, the statute must be applied as written and the economic-substance doctrine is not made relevant by what the Code says or might say in the future. *See, e.g., Gitlitz*, 531 U.S. at 220. Taxpayers are merely "required to be compliant, not prescient." *Veritas Software Corp. v. Commissioner*, 133 T.C. 297, 316 (2009). Accordingly, courts refuse to "stretch inapplicable judicial doctrines to corral a transaction that escaped before Congress closed the barn door." *Flextronics America, LLC v. Commissioner*, 2010 Tax Ct. Memo. LEXIS 282 at *12-13 (Nov. 8, 2010), *aff'd*, 499 F. App'x 725 (9th Cir. 2012).

The Supreme Court applied this principle in *Higgins v. Smith*, 308 U.S. 473 (1940). In that case, between the time of the taxable year before the Court and the time of the Court's decision, Congress enacted a provision that explicitly denied a deduction for the losses at issue. The Court held that this statutory provision did not imply the law was otherwise in prior years. *Id.* at 479-80. Thus, if a taxpayer completes a transaction that "the law permits" (*Gregory*, 293 U.S. at 469), and if Congress subsequently changes the law to eliminate the tax benefit, the economic-substance doctrine is not relevant to the transaction.

### C.    If the Statute Is an Anti-Abuse or Anti-Avoidance Test, the Economic-Substance Doctrine Cannot Override that Congressional Rule.

The Code is full of targeted and narrowly tailored anti-abuse and anti-avoidance provisions that mandate very specific tax treatment. For example, section 269(a) denies tax benefits from corporate acquisitions if "the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax." Similarly, section 355(a)(1)(D) prohibits taxpayers from keeping certain stock if it

was held "in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax."[8]

Some anti-abuse rules apply mechanically and mandate specific tax consequences for particular transactions. For instance, Congress enacted section 304 to ensure that taxpayers don't circumvent the redemption and distribution provisions of sections 301 through 303. To achieve that end, section 304 requires a particular tax outcome: it deems certain sales as redemptions if both the target and acquiring corporation are controlled by a common group. *See Webb v. Commissioner*, 67 T.C. 293, 303 (1976) (acknowledging Congress closed loophole with section 304), *aff'd per curiam*, 572 F.2d 35 (5th Cir. 1978).

In these circumstances, courts apply the statutory anti-abuse rule and don't apply the economic-substance doctrine. *See Canaveral Int'l Corp. v. Commissioner*, 61 T.C. 520 (1974) (solely applying section 269(a) anti-abuse rule, not economic-substance doctrine); *Trans City Life Ins. Co. v. Commissioner*, 106 T.C. 274 (1996) (solely applying section 845(b) anti-abuse rule).

---

[8] Other examples abound. *See, e.g.*, sections 170(f)(9) (denying charitable deductions made to avoid application of section 162(e)); 269B(b) (preventing tax avoidance through use of stapled entities); 357(b)(1) (excepting tax-avoidance plans from the operation of 357(a)); 467(b)(2) (requiring "constant rental accrual in case of certain tax avoidance transactions"); 877 (addressing expatriations undertaken to avoid tax).

14

The litany of targeted statutory anti-abuse provisions also shows that the economic-substance doctrine isn't a catchall provision that applies in every case. If Congress had intended section 7701(o) to operate as a general anti-abuse rule, it would not have imposed the threshold relevancy requirement. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted); *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 167 (2004) (It is a "settled rule that [the Court] must, if possible, construe a statute to give every word some operative effect.").

Just as statutory anti-abuse rules preclude the application of the economic-substance doctrine, so too do other common-law doctrines that better suit the circumstances. Precedent clarifies that the economic-substance doctrine is not relevant if another doctrine is more appropriate to the transaction at issue. In *Rogers v. United States*, 281 F.3d 1108 (10th Cir. 2002), this Court distinguished the substance-over-form doctrine from the economic-substance doctrine and described the different circumstances in which each applied. Specifically, this Court concluded that "the court does not apply the substance over form analysis where the transaction is not bona fide; rather, if the transaction lacks economic reality, it is analyzed using the economic substance doctrine." *Id.* at 1116. But if the transaction has "real-world

15

economic consequences, application of the economic substance doctrine is not appropriate." *Id.* at 1118. Thus, if the transaction's substance doesn't match its form, then courts recharacterize the transaction in accordance with its substance and then apply the pertinent tax rules to the recharacterized transaction to determine the appropriate tax consequences. *Id.*; *see also Jackson v. Commissioner*, 966 F.2d 598 (10th Cir. 1992) (denying deduction under sham-transaction doctrine where taxpayers purchased an interest in a purported jewelry distribution network that had no products to sell and no established goodwill).

The principle of applying the more-applicable anti-abuse rule is crucial, as the appropriate remedy follows from the proper rule. The remedy for a transaction that lacks economic substance is to disregard that transaction in full. *See* Section 7701(o)(5)(A) (disallowing the transaction's tax benefit). In contrast, the substance-over-form doctrine *recasts* the transaction to accord with its form; it doesn't disregard the transaction *entirely*. *See Rogers*, 281 F.3d at 1115-16. Section 7701(o)'s relevancy requirement is thus a necessary step to determining the proper remedy.

### D.    If the Statute Includes a Term that Requires an Economic Inquiry, the Economic-Substance Doctrine May Be Relevant.

Supreme Court precedent reinforces the paramount importance of statutory text, as the Court has repeatedly tied economic-substance inquiries to specific statutory terms that are pertinent to the transaction. The Court has applied the

16

doctrine only where the statutory term required further consideration of the economics or purpose of the transaction (in order to determine if the transaction satisfied the applicable statute).

For example, in *Gregory*, the Court considered the term "reorganization" under section 112 of the Revenue Act of 1928. 293 U.S. at 468. There, a corporation transferred certain securities to a newly organized subsidiary and distributed the subsidiary's stock to the corporation's sole shareholder, Mrs. Gregory, who then liquidated the subsidiary and sold the securities received in the liquidation. Mrs. Gregory reported the transfer of shares to the newly organized subsidiary as a tax-free reorganization. *Id.* at 467. The Supreme Court analyzed the text of section 112 to see what Congress intended and concluded that the phrase "in pursuance of a plan of reorganization" required the transfer to be made to pursue corporate business, and not the pursuance of a plan having no relation to the business. *Id*. at 468-70. Because the transaction was "a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner," the Supreme Court concluded that "the transaction upon its face lies outside the plain intent of the statute." *Id.* at 469-70.

Likewise, in *Knetsch v. United States*, 364 U.S. 361, 365 (1960), the Court considered whether payments constituted "interest paid … on indebtedness" within the meaning of section 23(b) of the 1939 Code and section 163(a) of the 1954 Code.

The taxpayer borrowed $4 million from an insurance company at a 3.5% interest rate so he could invest the money, with the same company, in deferred annuity bonds that offered only a 2.5% return. *Id*. at 364-65. Under then-applicable law, interest payments were immediately deductible on the loan, but interest income was deferred on the annuity. The statute thus required an economic inquiry to determine whether the transaction gave rise to indebtedness (and related interest payments). The Court found that the transaction was a fiction because the taxpayer's equity (*i.e.*, the excess of the cash value of the contracts over the escalating debt) did not exceed $1,000 and the only thing ostensibly lent back was the rebate of a substantial part of the so-called interest payments. *Id.* at 365-66. Because the taxpayer's transaction was not in substance a loan and "there was nothing of substance to be realized by [the taxpayer] from this transaction beyond a tax deduction," the Court disregarded the transaction and disallowed the taxpayer's interest payment deduction. *Id.* at 366.

Similarly, in *Frank Lyon Co. v. United States*, 435 U.S. 561 (1978), the Court considered a sale-lease-back transaction and taxpayer's deduction of interest under section 163(a) of the of the 1954 Code. There, the taxpayer borrowed money, bought a building from a bank, and leased the building back to a bank for rent equal to the taxpayer's payments of principal and interest on the loan. The lease agreement also provided the taxpayer with a fixed rate of return. *Id.* at 561-69. The Court considered—and ultimately rejected—the application of the economic-substance

doctrine because the transaction was a substantive, genuine multi-party transaction that was encouraged by business and regulatory realities. The Court concluded that the taxpayer was entitled to interest deductions and depreciation deductions because "the obligations on which [taxpayer] paid interest were its obligations alone" and it was the taxpayer's capital that was invested in the building. *Id*. at 580-81.

Tenth Circuit precedent confirms that the economic-substance doctrine is relevant only to transactions involving a statutory provision that includes some type of economic requirement or involves an economic test. For example, in *Bohrer v. Commissioner*, 945 F.2d 344 (10th Cir. 1991), this Court concluded that certain straddle transactions lacked economic substance where the transaction was not entered into "for profit"—which was a requirement for deductibility under section 165. Similarly, in *Keeler v. Commissioner*, 243 F.3d 1212 (10th Cir. 2001), this Court held that the taxpayer's straddle transactions lacked economic substance because the taxpayer deliberately incurred losses that were not real due to the taxpayer's offsetting gain positions, but independently affirmed the denial on the ground that the taxpayer's transactions failed the "for profit" requirement in section 165(c).

In addition, because statutory terms sometimes incorporate economic concepts, courts have reflected economic-substance principles in their analysis. In doing so, courts do not always mention the doctrine by name or find it necessary to

19

apply the doctrine since the economic-substance principles are imbued in the statutory language itself. For example, in *Olsen*, this Court concluded that the statutory text necessitated a profit motive, as section 167 permitted a deduction only if the property was "used in the trade or business" or "held for the production of income"—terms that require the taxpayer to have a profit motive. 52 F.4th at 896-97 (quoting section 167(a)(1), (2)). While this Court didn't cite the economic-substance doctrine in that case, it nonetheless drew on economic-substance cases to evaluate the taxpayer's profit motive. Similarly, in *Nickeson v. Commissioner*, 962 F.2d 973 (10th Cir. 1992), this Court considered whether the Tax Court appropriately held that the taxpayer's transactions lacked economic substance and were carried out for tax benefits only, rather than for profit. In disallowing the taxpayer's deductions, this Court explained that there was a clearer and simpler basis for its holding—namely, the taxpayer's failure to satisfy section 174's "trade or business" requirement, which requires taxpayers to show both a profit motive and substantial and regular activities. *Id.* at 978. Because the taxpayer's activities never went beyond that of passive investors, the trade-or-business requirement was not satisfied. *Id.* And because the well-established meaning of the statutory text answered the question at issue, this Court did not need to resort to the economic-substance doctrine to construe the statute.

20

The statutory relevancy requirement significantly narrows the scope of the economic-substance doctrine. The doctrine potentially applies only after the court has determined that (1) the transaction isn't a matter of taxpayer choice and (2) the statutory language allows room for the doctrine to apply. Even then, the government must make a prima facie case that the transaction is an economic sham. *See e.g.*, *Knetsch*, 364 U.S. at 364-65 (relevant where statute included economic terms—"interest paid … on indebtedness"—and government presented facts indicating transaction might be artificial—purchasing 2.5% interest rate bonds in exchange for a 3.5% interest rate note). If the doctrine is relevant and if the government makes this showing, then the two-part test in section 7701(o)(1)(A) and (B) kicks in and allows a court to test if the transaction was economically real by evaluating whether (1) the transaction meaningfully changes the taxpayer's economic position and (2) the taxpayer has a substantial non-tax business purpose for the transaction. If the taxpayer proves those points, then the pertinent tax consequences are allowed. But

if the taxpayer cannot prove those points, then the doctrine applies to disregard the

transaction in full.[9]

## III. The Economic-Substance Doctrine Does Not Depend on Subjective Notions of Legislative "Intent."

The district court in this case dispensed with the relevancy requirement,

asserting circularly that "the economic substance doctrine applies when a transaction

lacks economic substance." *Liberty Global, Inc. v. United States*, 2023 U.S. Dist.

LEXIS 209613, *13-14 (D. Colo. Oct. 31, 2023). In support of this admitted

"tautology," the district court concluded that pertinent inquiry is "whether a

transaction's benefits violate the legislative intent." *Id.* at *12. While courts in the

past have sometimes taken a "revenue raising" purposive approach to statutory

---

[9] This Court's precedents confirm the conclusion that the economic-substance doctrine only ultimately disregards the relatively narrow set of transactions involving economic shams (after determining relevance and then applying the doctrine's test). This Court has long made clear that "[t]he *absence of economic reality* is the hallmark of a transaction lacking economic substance." *Sala v. United States*, 613 F.3d 1249, 1254 (10th Cir. 2010) (emphasis added); *see also Blum v. Commissioner*, 737 F.3d 1303, 1310 (10th Cir. 2013) ("For many decades, cases have identified the *artificiality* of a transaction[] as one of the most important factors to consider when evaluating economic substance.") (alteration in original) (emphasis added) (citing *Shoenberg v. Commissioner*, 77 F.2d 446, 449 (8th Cir. 1935)); *Bohrer*, 945 F.2d at 347 (considering whether the transaction is sham); *James v. Commissioner*, 899 F.2d 905, 908 (10th Cir. 1990) (same).

interpretation of the tax laws,[10] modern Supreme Court precedent rejects such an inquiry and instead dictates that "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). It follows that courts "may not 'replace the actual text with speculation as to Congress'[s] intent.'" *Id.* (quoting *Magwood v. Patterson*, 561 U.S. 320, 334 (2010)). Further, the "thing which the statute intended" can be determined only by interpreting the words of the statute, as "[t]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *United States v. Goldenberg*, 168 U.S. 95, 102-03 (1897). Failing to apply this fundamental principle of statutory interpretation to, of all things, the tax laws, in favor of a doctrine that can only be a tool of statutory interpretation would create an approach "good for tax law only"—something the Supreme Court has been loath to countenance. *Mayo Foundation for Medical Ed. & Research v. United States*, 562 U.S. 44, 55 (2010).

---

[10] *See*, *e.g.*, *Gilbert v. Commissioner*, 248 F.2d 399, 411 (2d Cir. 1957) (Hand, J., dissenting) ("[W]e cannot suppose that it was part of the purpose of the act to provide an escape from the liabilities that it sought to impose."); *United States v. Klinger*, 199 F.2d 645, 648 (2d Cir. 1952) ("[H]ow far is it proper to read the words out of the literal meaning in order to realize their overriding purpose? … Flinch as we may, what we do, and must do, is to project ourselves, as best we can, into the position of those who uttered the words, and to impute to them how they would have dealt with the concrete occasion.").

The third key relevancy principle follows from these core principles: if the statute requires the particular tax outcome, the economic-substance doctrine is not relevant, regardless of subjective notions of congressional "intent." Simply put, the doctrine is not a tool for using policy considerations to override statutory text. Here, as elsewhere, courts should reject "naked policy appeals" and "apply[] the law's demands as faithfully as [they] can in the cases that come before [them]." *Bostock v. Clayton County*, 590 U.S. 644, 680-81 (2020). Thus, "[w]hen the express terms of a statute give [a court] one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law … ." *Id.* at 653. Supreme Court precedent thus makes clear that the economic-substance doctrine is not relevant if the statute requires the particular tax outcome, regardless of whether the government (or the court) believes that some other outcome is preferable as a matter of tax policy. *See, e.g., Gitlitz*, 531 U.S. at 220 (permitting a double tax benefit because the "Code's plain text permits the taxpayers here to receive these benefits"); *Boulware v. United States*, 552 U.S. 421, 430-31 (2008) (rejecting asserted intent requirement where statute dictated tax consequences based on facts wholly independent of intent); *Cumberland Public Serv.*, 338 U.S. 451 (permitting tax benefit where Congress mandated the tax consequences); *Boone v. United States*, 470 F.2d 232, 237 (10th Cir. 1972) ("[I]t is not for the courts to rewrite or redirect the transaction simply to eliminate [a perceived] inequity.").

The Supreme Court's *Gitlitz* opinion illustrates this rule. There, the Court held that a single transaction entitled stockholders to two separate benefits—an increase in tax basis and an exemption from income tax—based on the plain statutory text. *Gitlitz*, 531 U.S. at 219-20. This Court had previously concluded that the Commissioner properly denied taxpayers' losses because it did "not believe Congress *intended* to confer such a windfall upon individuals in their position." *Gitlitz v. Commissioner*, 182 F.3d 1143, 1148 (10th Cir. 1999) (emphasis added), *rev'd*, 531 U.S. 206 (2001). To reach what it viewed as the appropriate result, this Court did not apply the statute as written, and instead adjusted the application to eliminate the perceived double-benefit. *Id.* The Supreme Court rejected this approach and ruled in the taxpayer's favor based on the Code's plain language. *Gitlitz*, 531 U.S. at 219-20.

The economics of the transaction in *Gitlitz* also weren't relevant to the disposition of the case. The Supreme Court explicitly rejected the Commissioner's argument that the discharge of indebtedness should be treated differently merely because it required no economic outlay on the taxpayer's part. *Id.* at 213-14. The Court explained that without statutory language requiring non-recognized cancellation-of-indebtedness income to not be treated as an item of income, the Court would not read such a rule into the Code. *Id.* at 213-16.

The Supreme Court declined to "address the policy concern" because the "Code's plain text permit[ed] the taxpayers here to receive these benefits." *Id.* at 220. Ultimately, the constitutional system worked exactly as the Founders designed it to. Congress amended the Code in the wake of *Gitlitz* to specifically reverse the impact of the Supreme Court's holding. *See* H.R. Rep. No. 107-251, at 51-52 (2001). This shows that if Congress perceives a flaw in the statute, Congress—and Congress alone—has the power to change the statute.

In short, the Code's precise language defines and delimits Congress's intent. *Summa Holdings*, 848 F.3d at 789-90 ("[P]urpose must be grounded in text. It cannot be invoked to save the statute from itself."). The economic-substance doctrine doesn't turn on an atextual inquiry into extra-statutory intent or the government's preference for revenue raising.

This brings us back to where we began: tax motive is not relevant in determining whether what was done, was the thing the statute intended. *See e.g.*, *Gregory*, 293 U.S. at 469. To the contrary, the Code's plain text defines the tax consequences of the transaction. And the economic-substance doctrine does not allow the government or the courts to override plain statutory text any time they subjectively consider a tax outcome to be too beneficial. The relevancy requirement, properly applied, constrains the power to override the Code and create a tax result

different from the one compelled by Congress in the text of the operative statutory provision.

## CONCLUSION

Failing to apply the Code's plain language ultimately subverts Congressional intent, as "[t]he best evidence of [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President." *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 98 (1991). Ignoring section 7701(o)'s threshold relevancy requirement nullifies Congress's command to first conclude that the economic-substance doctrine is relevant before delving more deeply into the transaction itself.

Ignoring the operative statutory language in favor of an extratextual purposive approach also fails to give effect to the rich tapestry of the Code, whose words are carefully chosen and intricately woven to address the full range of activity potentially subject to taxation. And it deprives taxpayers of fair notice of the law that applies to their transactions, thereby eliminating tax certainty and the ability to predict in advance the tax outcomes that Congress provided for in the applicable statutes. For this reason, that doctrine must be tightly constrained and carefully applied.

Dated: May 7, 2024

Respectfully submitted,

/s/ George M. Clarke III

George M. Clarke III
Joseph B. Judkins
Joy A. Williamson
Carlton A. Tarpley
David M. Brotz
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 452-7000
george.clarke@bakermckenzie.com

*Counsel for Alliance for Business
Partnerships*

## CERTIFICATE OF COMPLIANCE

The foregoing document complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a) because it contains 6,374 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: May 7, 2024

/s/ George M. Clarke III
George M. Clarke III
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 452-7000
george.clarke@bakermckenzie.com

*Counsel for Alliance for Business Partnerships*

29

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing document, as submitted in digital form via CM/ECF, is an exact copy of the written document filed with the Clerk of the Court. This document has been scanned for viruses with Cortex XDR, and, according to that program, is free of viruses. This document complies with Circuit Rule 25.5. No privacy redactions were required in this document and thus no redactions were made.

Dated: May 7, 2024

/s/ George M. Clarke III
George M. Clarke III
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 452-7000
george.clarke@bakermckenzie.com

*Counsel for Alliance for Business Partnerships*

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2024, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.


Dated: May 7, 2024                  /s/ George M. Clarke III
                                    George M. Clarke III
                                    Baker & McKenzie LLP
                                    815 Connecticut Avenue, N.W.
                                    Washington, DC 20006
                                    (202) 452-7000
                                    george.clarke@bakermckenzie.com

                                    *Counsel for Alliance for Business Partnerships*