## Case No. 23-1410

*In the*

# United States Court of Appeals

*for the*

# Tenth Circuit

---

LIBERTY GLOBAL, INC.,

*Petitioner-Appellant,*

v.

UNITED STATES,

*Respondent-Appellee.*

---

*Appeal from a Decision of the United States District
Court for the District of Colorado
Case No. 1:20-cv-03501-RBJ  •  Honorable R. Brooke Jackson*

---

**BRIEF OF THE
AMERICAN FOREST & PAPER ASSOCIATION AS *AMICUS CURIAE*
IN SUPPORT OF PETITIONER-APPELLANT AND REVERSAL**

George Gerachis, Esq.
VINSON & ELKINS LLP
Texas Tower, 845 Texas
Avenue
Suite 4700
Houston, Texas 77002
(713) 758-1056 (tel.)
ggerachis@velaw.com

*Of Counsel*

Gary Huffman, Esq.
VINSON & ELKINS LLP
2200 Pennsylvania
Avenue NW
Suite 500 West
Washington, DC 20037
(202) 639-6771 (tel.)
ghuffman@velaw.com

*Of Counsel*

Kathleen Pakenham, Esq.
VINSON & ELKINS LLP
1114 Avenue of the
Americas
New York, New York
10036
(212) 237-0149 (tel.)
kpakenham@velaw.com

*Counsel for Amicus
Curiae*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* certifies as follows:

*Amicus* has no parent corporations, is not a publicly held corporation, and no publicly held corporation owns ten percent or more of the organizational stock of any *amicus* party.

# <u>TABLE OF CONTENTS</u>

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

IDENTITY AND INTERESTS OF AMICUS CURIAE .........................................1

BACKGROUND OF THE ECONOMIC SUBSTANCE DOCTRINE ...................5

ARGUMENT .......................................................................................................8

      I.      CONGRESS CONFIRMED THAT THE ECONOMIC SUBSTANCE DOCTRINE ONLY APPLIES WHEN IT IS "RELEVANT." ...........................10

      II.     THE ECONOMIC SUBSTANCE DOCTRINE IS A CANON OF STATUTORY INTERPRETATION THAT IS RELEVANT TO THE CONSTRUCTION OF PROVISIONS OF THE INTERNAL REVENUE CODE ONLY WHEN THE LANGUAGE OF THE PARTICULAR PROVISION INCORPORATES AN ECONOMIC SUBSTANCE CONCEPT, EITHER IMPLICITLY OR EXPLICITLY. IT CANNOT APPLY TO CERTAIN BASIC BUSINESS TRANSACTIONS OR TO TAX INCENTIVE PROVISIONS. ...........16

            A.     The Relevance Standard Can Be Derived from Pre-enactment Supreme Court Jurisprudence, Which Uniformly Holds That the Economic Substance Doctrine Applies Only if the Statute To Be Interpreted Implicitly or Explicitly Requires Economic Substance. .................................................................................17

            B.     The Economic Substance Doctrine Is *Per Se* Not Relevant to Transactions Where the Choice Between Meaningful Economic Alternatives Is Based on Comparative Tax Advantages or to Transactions Undertaken to Take Advantage of Specific Tax Incentives Provided by Congress...............................................22

CONCLUSION....................................................................................................26

CERTIFICATE OF COUNSEL REGARDING AUTHORITY TO FILE .............27

CERTIFICATE OF COMPLIANCE....................................................................28

CERTIFICATE OF DIGITAL SUBMISSION .....................................................29

CERTIFICATE OF SERVICE .............................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACM Partnership v. Commissioner*,
  73 T.C.M. (CCH) 2189 (1997), *aff'd* 157 F.3d 231 (3d Cir. 1998)......................17

*Blum v. Commissioner*,
  737 F.3d 1303 (10th Cir. 2013)...................................................................... 14, 15

*BNSF Railway Co. v. Loos*,
  139 S. Ct. 893 (2019) ........................................................................................12

*Coltec Industries, Inc. v. United States*,
  454 F.3d 1340 (Fed. Cir. 2006) .........................................................................6

*Connecticut National Bank v. Germain*,
  503 U.S. 249 (1992) ..........................................................................................13

*Cottage Savings Association v. Commissioner*,
  499 U.S. 554 (1991) ..................................................................................... 20, 21

*Forest Guardians v. Babbitt*,
  174 F.3d 1178 (10th Cir. 1999)........................................................................12

*Frank Lyon Co. v. United States*,
  435 U.S. 561 (1978) ..................................................................................... 19, 20

*Gitlitz v. Commissioner*,
  531 U.S. 206 (2001) ............................................................................................6

*Gregory v. Helvering*,
  293 U.S. 465 (1935) ......................................................................................5, 18

*Historic Boardwalk Hall, LLC v. Commissioner*,
  694 F.3d 425 (3d Cir. 2012) .............................................................................24

*Jewell v. United States*,
  749 F.3d 1295 (10th Cir. 2014).........................................................................12

*Knetsch v. United States*,
  364 U.S. 361 (1960) ..........................................................................................18

*Nebraska Department of Revenue v. Loewenstein*,
  513 U.S. 123 (1994) ..........................................................................................20

*Polselli v. Internal Revenue Service*,
  598 U.S. 432 (2023) ..........................................................................................13

*United States v. Consumer Life Insurance Co.*,
430 U.S. 725 (1977) ...............................................................................19

*United States v. Myers*,
106 F.3d 936 (10th Cir. 1997) ...............................................................12

**Statutes**

26 U.S.C. § 42 ........................................................................................24

26 U.S.C. § 45 ........................................................................................24

26 U.S.C. § 45D ......................................................................................25

26 U.S.C. § 45Q ......................................................................................25

26 U.S.C. § 45V ......................................................................................25

26 U.S.C. § 45Z ......................................................................................25

26 U.S.C. § 47 ........................................................................................25

26 U.S.C. § 48 ....................................................................................3, 24

26 U.S.C. § 163(a) ..................................................................................18

26 U.S.C. § 167 ......................................................................................20

26 U.S.C. § 351(b) ..................................................................................15

26 U.S.C. § 6418 ................................................................................3, 25

26 U.S.C. § 6662(b)(6) .............................................................................7

26 U.S.C. § 6662(i) ...................................................................................7

26 U.S.C. § 6664(c) ..................................................................................7

26 U.S.C. § 7701(*o*) .................................. 4, 6, 7, 8, 9, 10, 12, 13, 16, 21, 22, 25, 26

26 U.S.C. § 7701(*o*)(1)............................................................... 7, 9, 11

26 U.S.C. § 7701(*o*)(1)(A)-(B) ..............................................................15

26 U.S.C. § 7701(*o*)(5)(C) ....................................... 9, 11, 12, 16, 21

Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-
152, 124 Stat. 1029 (Mar. 30, 2010) ......................................................6

**Regulations**

26 C.F.R. § 301.7701-1............................................................................23

## Constitutional Provisions

U.S. CONST., art. I, § 1 ...............................................5

U.S. CONST., art. I, § 6 ...............................................5

U.S. CONST., art. III, § 2 ...............................................5

## Other Authorities

American Bar Association Tax Section Letter to IRS Commissioner
Shulman, Comments on IRS Notice 2010-62 (Jan. 18, 2011) ...................... 6, 7, 8

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of
Legal Texts* (2012) ...............................................13

Donald L. Korb, *Remarks at the 2005 University of Southern California Tax
Institute: The Economic Substance Doctrine in the Current Tax Shelter
Environment* (January 25, 2005) ...............................................8

H.R. Rep. No. 111-443 (2010) ............................... 9, 13, 14, 22

Investing in Qualified Opportunity Funds, 84 Fed. Reg. 18,652 (May 1,
2019) ...............................................24

James S. Halpern, *Putting the Cart before the Horse: Determining Economic
Substance Independent of the Language of the Code*, 30 VA. TAX REV.
327 (2010) ...............................................15

Joint Committee on Taxation, *General Explanation of Tax Legislation
Enacted in the 111th Congress* (JCS-2-11) (Mar. 2011) ...................................14

Joint Committee on Taxation, *Technical Explanation of the Revenue
Provisions of the "Reconciliation Act of 2010," as amended in
Combination with the "Patient Protection and Affordable Care Act,"*
JCX-18-10 (Mar. 21, 2010) ................................... 14, 22, 23

Jonathan H. Choi, The Substantive Canons of Tax Law, 72 STAN. L. REV.
195 (Feb. 2020) ...............................................6, 17

Joseph T. Henderson, *Liberty Global Economic Substance Analysis Merits a
Reversal*, 181 TAX NOTES 1833 (Dec. 4, 2023) ...............................................15

Stanley S. Surrey, *Tax Incentives as a Device for Implementing Government
Policy: A Comparison with Direct Government Expenditures*, 83 HARV. L.
REV. 705 (1970) ...............................................24

## **IDENTITY AND INTERESTS OF AMICUS CURIAE**[1]

The American Forest & Paper Association ("AF&PA") serves to advance a sustainable U.S. pulp, paper, packaging, tissue, and wood products manufacturing industry through fact-based public policy and marketplace advocacy.  AF&PA member companies make products essential for everyday life from renewable and recyclable resources and are committed to continuous improvement through the industry's sustainability initiative, *Better Practices, Better Planet 2020*.  The forest products industry accounts for approximately four percent of total U.S. manufacturing GDP, manufactures over $200 billion in products annually, and employs approximately 900,000 people.

*Amicus* files this brief with a straightforward objective: Regardless of whether the Court affirms or reverses the decision below on other grounds or other case-specific evidence, it should take care that its opinion confirms the clear intent of Congress by (1) applying the economic substance doctrine only to transactions to which the doctrine is "relevant" and (2) defining relevance consistent with pre-enactment caselaw, which holds that the economic substance doctrine is not applicable to (*i.e.*, is not relevant to) the interpretation of an Internal Revenue Code

---

[1] No party or counsel for a party authored this brief, in whole or in part.  No one other than *amicus*, its members, or its counsel made a monetary contribution to preparing or submitting this brief.

1

provision, unless the provision implicitly or explicitly requires the taxpayer to have a substantial nontax business purpose and the transaction results in a meaningful nontax change in economic position. This definition of relevance *per se* precludes the application of the economic substance doctrine to certain basic business transactions where the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages, or to transactions that take advantage of specific incentive provisions enacted by Congress.

American businesses are routinely called upon to make choices regarding how they structure their enterprises and conduct transactions. Nearly all these decisions have tax implications. But not all these decisions should require an economic substance analysis, as the Supreme Court has long held. Consider the following examples:

- Two unrelated companies form a limited liability company ("LLC") to conduct a new joint venture and elect to treat the LLC as a partnership for tax purposes, rather than as a corporation, for no reason other than to avoid entity-level tax on the LLC's income.

- A company forms a corporation and capitalizes the corporation 50 percent with debt and 50 percent with equity instead of 100 percent with equity, solely to take advantage of the tax deductibility of interest on debt.

- A corporation chooses to sell appreciated property to recognize a gain in the current tax year because the gain can be offset by a loss carryforward that will expire at the end of the current tax year.

- A company invests in a project to produce electricity from wind turbines that is not forecast to produce a pre-tax profit solely because the income tax credit provided by 26 U.S.C. § 48 results in an after-tax profit.

- A company that has positive income tax liability purchases solar tax credits pursuant to 26 U.S.C. § 6418 from a second company that has generated the tax credits but has a taxable loss from its operations for the sole purpose of reducing the purchasing company's federal income tax liability.

The foregoing are common, everyday transactions taxpayers have conducted with no doubt about their tax consequences before the lower court's decision in this case. That decision ignores the reality that the Internal Revenue Code is replete with provisions that permit or even encourage taxpayers to engage in, or select the form of, a transaction for no reason other than its tax consequences. In enacting these provisions Congress has made a deliberate legislative choice to provide predictability and certainty in the taxation of routine transactions and to incentivize certain behavior through the Internal Revenue Code.

3

The district court ruled that the application of each and every provision of the Internal Revenue Code is available to a taxpayer only if a transaction triggering that provision has both a nontax business purpose and meaningful nontax economic consequences.  If left to stand, the lower court's opinion will cast doubt and uncertainty over the taxation of numerous ordinary course transactions and those that take advantage of tax incentives bestowed by Congress.  By ruling that there is no threshold determination under section 7701($o$) as to whether the economic substance doctrine is "relevant," the lower court's decision opens the door to the IRS arguing that the doctrine applies in every case.  If the taxpayer's chosen path were solely based on tax considerations—even those clearly contemplated by the statute—the IRS would claim the superpower to override Congress' will by asserting a lack of economic substance.

The outcome of these issues is of immediate and serious concern to the forest products industry, which relies on predictable and uniform application of the tax laws to ordinary course business transactions and transactions undertaken in reliance on the availability of statutory tax incentives.  These everyday transactions range from selecting the form of entity for a new company to investing in innovative technologies and sustainability measures.

4

## BACKGROUND OF THE ECONOMIC SUBSTANCE DOCTRINE

Many courts and commentators trace the origins of the economic substance doctrine to *Gregory v. Helvering*, 293 U.S. 465 (1935).  In that case, Gregory engaged in a transaction that in form met the requirements of a "reorganization" without the intent to continue the underlying business that was "reorganized."  The central inquiry was "whether what was done, apart from tax motive, was *the thing which the statute intended*." *Gregory*, 293 U.S. at 469 (emphasis added).  The Court concluded that Congress did not intend for transactions like Gregory's to be treated as a "reorganization" under the relevant statute.  Eventually, this holding became the "economic substance doctrine." In the decades that followed *Gregory*, related doctrines developed, and different circuits applied varying approaches and formulated varying tests for applying these doctrines.

*Gregory* and its progeny, of course, do not give courts power to disregard policy choices made by Congress when it implements those choices in the provisions of the Internal Revenue Code.  *Cf.* U.S. CONSTITUTION, art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the Unites States …."), § 6 ("The Congress shall have Power To lay and collect Taxes….") *with* art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States…."); *see also Gitlitz v. Comm'r*, 531 U.S. 206, 219-20 (2001) (rejecting decisions by Courts of Appeals that ignored

5

statutory text in part because of policy concerns that taxpayers would receive a "double windfall" if the literal terms of the Internal Revenue Code were followed). At its core, the economic substance doctrine is a tool of statutory construction used by courts to interpret certain statutes written by Congress. *E.g.*, *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("the economic substance doctrine is not unlike other canons of construction that are employed in circumstances where the literal terms of a statute can undermine the ultimate purpose of the statute"); Jonathan H. Choi, *The Substantive Canons of Tax Law*, 72 STAN. L. REV. 195 (Feb. 2020).

To clarify how the economic substance doctrine should apply, Congress added section 7701(*o*) – titled "Clarification of the Economic Substance Doctrine" – to the Internal Revenue Code (26 U.S.C.) in 2010. Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (Mar. 30, 2010). Although section 7701(*o*) clarified the answers to some questions about the common law economic substance doctrine, it left others unresolved. *See* American Bar Association Tax Section Letter to IRS Commissioner Shulman, Comments on IRS Notice 2010-62 at 2 (Jan. 18, 2011) (the "ABA Comment Letter").

More than a decade has passed since Congress enacted 26 U.S.C. § 7701(*o*), but this case presents the first important consideration of issues posed by Congress's clarification of the economic substance doctrine—the issue of when the economic

6

substance doctrine is "relevant." *See* 26 U.S.C. § 7701(*o*)(1). Although the statute on its face recognizes that there are situations in which the economic substance doctrine is not relevant, no court case decided prior to the enactment of 26 U.S.C. § 7701(*o*) used the term "relevant" in analyzing whether to apply the economic substance doctrine in a particular case. *See* ABA Comment Letter at 9.

This Court does not write on a blank slate, however. While the caselaw pre-dating Congress's clarification of the economic substance doctrine does not use the term "relevant," a careful reading of those authorities provides guidelines to determine when it is appropriate to use the doctrine to interpret a statute, while providing taxpayers with the quantum of predictability in application of the tax laws Congress intended.

Because the economic substance doctrine is notoriously difficult to apply and now includes a 40 percent strict liability penalty,[2] a predictable standard for determining when economic substance is relevant is absolutely critical.[3]

---

[2] A 40 percent strict liability penalty (reduced to 20 percent if certain disclosures are made) applies to an underpayment of income tax resulting from "Any disallowance of claimed tax benefits by reason of a transaction lacking economic substance (within the meaning of section 7701(*o*)) or failing to meet the requirements of any similar rule of law." 26 U.S.C. §§ 6662(b)(6) (imposing penalty), 6662(i) (increasing penalty to 40 percent for undisclosed transactions), 6664(c) (providing no reasonable cause defense available for penalties imposed under section 6662(b)(6)).

[3] At one point, the Chief Counsel of the IRS publicly acknowledged that "the economic substance doctrine should be used only rarely and judiciously" and should

As discussed below, the economic substance doctrine is not applicable (*i.e.*, is not relevant) to the interpretation of an Internal Revenue Code provision, unless the provision implicitly or explicitly requires the taxpayer to have a substantial nontax business purpose and the transaction results in a meaningful nontax change in economic position. This relevance standard, when properly applied, will exclude basic business transactions where the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages, as well as transactions undertaken in reliance on the availability of tax incentives provided by Congress. This result is consistent with the language of section 7701(*o*), the statutory context, and the legislative history and allows taxpayers to plan their affairs with reasonable predictability.

## ARGUMENT

One of the underlying tenets of the tax law is that taxpayers may plan transactions in reliance on the laws Congress has written. In promulgating section 7701(*o*), Congress acknowledged as much:

> The [Internal Revenue] Code provides detailed rules specifying the computation of taxable income, including the amount, timing, source, and character of items of income, gain, loss, and deduction. These rules

---

not be used to challenge tax benefits that the IRS "views as unintended or just because we do not like the transactions." ABA Comment Letter at 11 n.34 (citing Donald L. Korb, *Remarks at the 2005 University of Southern California Tax Institute: The Economic Substance Doctrine in the Current Tax Shelter Environment* (Jan. 25, 2005)).

> permit both taxpayers and the government to compute taxable income
> with reasonable accuracy and predictability.  Taxpayers generally may
> plan their transactions in reliance on these rules to determine the federal
> income tax consequences arising from the transactions.

H.R. Rep. No. 111-443 at 291 (2010) ("House Report").  In drafting section 7701(*o*),

Congress was mindful that its clarification of the economic substance doctrine as a

canon of statutory construction did not abrogate the need for predictability in tax

matters and was careful to provide that the doctrine is not relevant to all transactions.

As pertinent to the question raised here by *amicus*, the statute provides as

follows: "(o) Clarification of economic substance doctrine.  (1) Application of

doctrine.  In the case of *any transaction to which the economic substance doctrine*

*is relevant*, such transaction shall be treated as having economic substance only if"

a two-factor test is met.  26 U.S.C. § 7701(*o*)(1) (emphasis added).  The statute goes

on to provide "[t]he determination of *whether the economic substance doctrine is*

*relevant to a transaction* shall be made in the same manner as if this subsection had

never been enacted."  26 U.S.C. § 7701(*o*)(5)(C).

The issue here is whether the phrase "[i]n the case of any transaction to which

the economic substance doctrine is relevant" has any meaning, or whether – as the

district court concluded – it is mere surplusage.  As discussed below, Congress said

exactly what it meant: the economic substance doctrine is not relevant to all

transactions.  *See* Section I below.  The statute is unambiguous, the legislative

history is clear, and the language clarifies longstanding principles underlying

9

interpretation of the Internal Revenue Code. From these authorities, it is clear that the economic substance doctrine is not applicable (*i.e.*, is not relevant) to the interpretation of an Internal Revenue Code provision, unless the provision implicitly or explicitly requires the taxpayer to have a substantial nontax business purpose and the transaction results in a meaningful nontax change in economic position *See* Section II.A below. This means that the economic substance doctrine is not relevant to certain basic business transactions that under longstanding judicial and administrative practice are respected merely because the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages or to transactions that Congress seeks to incentivize through specified tax benefits. *See* Section II.B below.

## I.    CONGRESS CONFIRMED THAT THE ECONOMIC SUBSTANCE DOCTRINE ONLY APPLIES WHEN IT IS "RELEVANT."

After years of uncertainty concerning the precise contours of the economic substance doctrine as formulated by various federal courts, Congress stepped in to clarify the elements of the doctrine in cases where it was applicable. The resulting statute, 26 U.S.C. § 7701(*o*), is subtitled "Clarification of Economic Substance Doctrine."

By enacting section 7701(*o*), Congress did not dictate application of the economic substance doctrine to every Internal Revenue Code provision and transaction. Rather, as applicable to the question raised here by *amicus*, the statute

provides as follows: "Application of doctrine. *In the case of any transaction to which the economic substance doctrine is relevant*, such transaction shall be treated as having economic substance only if" two tests evaluating the economic substance of the transaction are satisfied. 26 U.S.C. § 7701(*o*)(1) (emphasis added). This two-part test evaluates whether a transaction has economic substance. The statute goes on to provide "Determination of application of doctrine not affected. *The determination of whether the economic substance doctrine is relevant to a transaction shall be made* in the same manner as if this subsection had never been enacted." 26 U.S.C. § 7701(*o*)(5)(C) (emphasis added).

The district court failed to follow the plain meaning of the words Congress chose, well-established canons of statutory interpretation, and decades of caselaw and scholarly commentary. In doing so, the lower court reads the "relevance" requirement out of the statute and instead engages in self-acknowledged circular reasoning to hold that the economic substance doctrine is relevant when a transaction lacks economic substance, stating:

> At the risk of tautology, I proceed with the conclusion that the economic substance doctrine applies when a transaction lacks economic substance. The question of whether the doctrine lacks economic substance is equivalent to the question of whether the tax benefits achieved in the transaction violate congressional intent and is analyzed using the enumerated statutory prongs — which are in turn elaborated and informed by the "red flags" that courts have long described … There is no "threshold" inquiry separate from the statutory factors.

Order on Cross-Motions for Summ. J., Dist. Ct. Doc. 87 (Oct. 31, 2023), App. Vol. 2 at 288-89 (internal citations omitted).

The statute commands, however, that a threshold determination be made as to whether the economic substance doctrine is relevant. The words of section 7701(*o*) are susceptible to only one reading.

The first place to begin the interpretation of the statute of course is "with the statutory text." *BNSF Ry. Co. v. Loos*, 139 S. Ct. 893, 899 (2019); *Jewell v. United States*, 749 F.3d 1295, 1298 (10th Cir. 2014) (interpreting Internal Revenue Code and stating "[W]e begin with the statutory language. If the plain language of the statute is clear, our inquiry ordinarily ends."). Here, the statutory text *requires* a determination of relevance and provides instructions on how that determination is to be made. It specifically states that "[t]he determination of whether the economic substance doctrine is relevant to a transaction *shall* be made …." 26 U.S.C. § 7701(*o*)(5)(C) (emphasis added).

The meaning of "shall" is clear. As this Court has held repeatedly, "shall" "indicates a mandatory intent." *Jewell* , 749 F.3d at 1298; *see also United States v. Myers*, 106 F.3d 936, 941 (10th Cir. 1997) ("It is a basic canon of statutory construction that use of the word 'shall' indicates a mandatory intent."); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) ("The Supreme Court

and this circuit have made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command.").

The district court's reading of section 7701(*o*) fails to accord separate meaning to the express and repeated use of the term "relevant" in the statute. It is well established that under the canon against superfluity courts "give effect to every clause and word of a statute." *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 441 (2023) (internal punctuation and citations omitted). *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 177 (2012) ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant."). Congress could have decreed that the economic substance doctrine applies to all transactions. It did not. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Here, Congress dictates that the doctrine is applied only when it is relevant.

The legislative history is consistent with the plain language of the statute as well as its role in the context of the detailed and complex statutory scheme that is our Internal Revenue Code. The House Report states that the economic substance analysis in section 7701(*o*) applies only "in the case of any transaction to which the economic substance doctrine is relevant" and that "[t]he determination of whether the economic substance doctrine is relevant to a transaction shall be made in the

same manner as if the provision had never been enacted." House Report at 295. The report goes on to confirm that "the provision does not change current law standards in determining when to utilize an economic substance analysis." House Report at 295-96. The General Explanation of Tax Legislation by the Staff of the Joint Committee on Taxation (often referred to as the "Bluebook") is consistent with the House Report. *See* Joint Comm. on Tax'n, *General Explanation of Tax Legislation Enacted in the 111th Congress* (JCS-2-11) at 378 (Mar. 2011); *see also* Joint Comm. on Tax'n, *Technical Explanation of the Revenue Provisions of the "Reconciliation Act of 2010," as amended in Combination with the "Patient Protection and Affordable Care Act,"* (JCX-18-10) at 152 (Mar. 21, 2010) ("JCT Technical Explanation").

The lower court erroneously relied on this Court's decision in *Blum v. Commissioner*, 737 F.3d 1303 (10th Cir. 2013), to conclude that there is no relevance requirement, despite the plain language of the statute. Order on Cross-Motions for Summ. J., Dist. Ct. Doc. 87 (Oct. 31, 2023), App. Vol. 2 at 288. That case, however, involved a widely-marketed tax shelter that already had been the subject of litigation in multiple courts. 737 F.3d at 1308-09. The Court and the parties did not consider the question of whether the economic substance doctrine was relevant – it was obvious in the context of the well-established fact pattern that the tax result was not

14

intended by Congress.  *Blum* does not establish a rule that the economic substance doctrine is always relevant when a transaction lacks economic substance.

Accordingly, *amicus* respectfully requests that the Court hold that it must first be determined whether the economic substance doctrine is relevant to interpretation of the particular Internal Revenue Code section to be construed and, only if the doctrine is relevant, then to apply the two-factor analysis found in section 7701(*o*)(1)(A)-(B).[4]

---

[4] Notably, the district court did not even attempt to construe 26 U.S.C. § 351(b), the operative statute.  Rather, the court began where it wanted to end, with the disallowance of the taxpayer's claimed tax treatment.  However, "the focus must be a purposive reading of the particular portion of the [Internal Revenue] Code in question and not the merits of the transaction in the abstract or the protection of the Code's integrity as a whole."  James S. Halpern, *Putting the Cart before the Horse: Determining Economic Substance Independent of the Language of the Code*, 30 VA. TAX REV. 327, 332 (2010).  *See also* Joseph T. Henderson, *Liberty Global Economic Substance Analysis Merits a Reversal*, 181 TAX NOTES 1833, 1835 (Dec. 4, 2023) ("When the government wishes the code said something it doesn't say, as in this case, it often attempts to supplant the rule in the code or the regulations with a 'more logical' outcome.  It generally fails at this, as it should have in *Liberty Global*.").

**II.    THE ECONOMIC SUBSTANCE DOCTRINE IS A CANON OF STATUTORY INTERPRETATION THAT IS RELEVANT TO THE CONSTRUCTION OF PROVISIONS OF THE INTERNAL REVENUE CODE ONLY WHEN THE LANGUAGE OF THE PARTICULAR PROVISION INCORPORATES AN ECONOMIC SUBSTANCE CONCEPT, EITHER IMPLICITLY OR EXPLICITLY.  IT CANNOT APPLY TO CERTAIN BASIC BUSINESS TRANSACTIONS OR TO TAX INCENTIVE PROVISIONS.**

The statute does not define "relevant," but it provides instructions on how the determination of relevance shall be made: "in the same manner as if this subsection had never been enacted".  26 U.S.C. § 7701(*o*)(5)(C).  That means this Court should look to caselaw before enactment of section 7701(*o*) to discern when the economic substance doctrine is relevant.  Pre-enactment caselaw, as discussed below, holds that economic substance is relevant only when the language of the Internal Revenue Code provision to be interpreted incorporates an economic substance concept.  *See* Section II.A below.

From this, we can derive two clear instances in which the economic substance doctrine will not be relevant: first, basic business transactions where the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages and second, transactions undertaken to take advantage of specific tax incentives provided by Congress.  *See* Section II.B below.

**A.    The Relevance Standard Can Be Derived from Pre-enactment Supreme Court Jurisprudence, Which Uniformly Holds That the Economic Substance Doctrine Applies Only if the Statute To Be Interpreted Implicitly or Explicitly Requires Economic Substance.**

Pre-enactment caselaw does not use the term relevance; however, courts historically have recognized that the economic substance doctrine is not applicable to (*i.e.*, is not relevant to) the interpretation of an Internal Revenue Code provision, unless the provision implicitly or explicitly requires the taxpayer to have a substantial nontax business purpose and the transaction results in a meaningful nontax change in economic position. *See, e.g.*, *ACM P'ship v. Comm'r*, 73 T.C.M. (CCH) 2189 at 2215 (1997) ("The [economic substance] doctrine becomes applicable, and a judicial remedy is warranted, where a taxpayer seeks to claim tax benefits, unintended by Congress, by means of transactions that serve no economic purpose other than tax savings."), *aff'd in part* 157 F.3d 231 (3d Cir. 1998).

This test for relevance is consistent with the operation of the economic substance doctrine as a canon of statutory construction. Jonathan H. Choi*, The Substantive Canons of Tax Law*, 72 STAN. L. REV. 195, 210 (Feb. 2020) ("Canons of construction are rules that guide courts in the interpretation of statutes."). It looks to the words of the statute as drafted by Congress (or other evidence of intent if not apparent from the text of the statute) and the proposed result and asks whether those are consistent. This test provides courts with flexibility to use the economic substance doctrine to ensure results that are consistent with congressional intent, but

also provides the executive branch and taxpayers with sufficient predictability on when the doctrine will or will not apply.

Application of the economic substance doctrine as a canon of statutory interpretation is consistent with decades of Supreme Court jurisprudence. While much has been written about the two-page *Gregory* opinion, the relevant principle here is that the Court found that *the specific Internal Revenue Code provision it was interpreting* required a nontax business purpose. As the Court wrote, the transaction was not a "reorganization" because the transaction "upon its face lies outside the plain intent of the statute. To hold otherwise would … deprive the statutory provision in question of all serious purpose." *Gregory*, 293 U.S. at 470.

The Supreme Court has consistently applied this approach. In *Knetsch v. United States*, 364 U.S. 361 (1960), the Court set aside the lower court's conclusion that tax motive was important and reiterated that the "question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended …." 364 U.S. at 365 (quoting *Gregory*, 293 U.S. at 469). The tax question in *Knetsch* was whether certain amounts were deductible interest on "indebtedness" within the meaning of 26 U.S.C. § 163(a) and its predecessor provision under the 1939 Internal Revenue Code. The Court relied on the statutory language, which it interpreted to require economically substantive indebtedness.

The Court continued to focus on statutory intent in *United States v. Consumer Life Insurance Company*, 430 U.S. 725 (1977). In that case, the government urged the Court to read what amounted to an economic substance requirement ("reserves follow the risk" rule) into the relevant Internal Revenue Code provision. The Court rejected the argument: "There is no suggestion [of a "reserves follow the risk" rule] in the plain language of the section … [i]f anything, the language is a substantial obstacle to accepting the Government's position. The word 'risk' does not occur." 430 U.S. at 740. The fundamental lesson from *Consumer Life* is that the Court focused on Congress's intent. Economic substance was not relevant to interpreting the statute and the Court declined to superimpose an economic substance requirement.

There are, of course, times when the economic substance doctrine is relevant because Congress embeds the concept into a provision of the Internal Revenue Code, as reflected in *Frank Lyon Co. v. United States*, 435 U.S. 561 (1978). In that case, the Court considered whether Lyon was the owner of property and, therefore, entitled to depreciation deductions. Lyon held legal title to the property pursuant to a sale-leaseback agreement. After examining the rights of the seller-lessee, the Court concluded that the economic substance of the arrangement was that Lyon was the owner for tax purposes. A careful reading of the Court's analysis shows that the crux of the decision was that economic substance was part of the ownership test

19

under 26 U.S.C. § 167, the pertinent statute. *See Nebraska Dept. of Rev. v. Loewenstein*, 513 U.S. 123, 133-34 (1994) (recognizing that *Frank Lyon* turned on the concept of ownership under the statute). As such, the court applied the economic substance doctrine to interpret the operative statute; the doctrine did not operate as a free-floating override to a tax favorable result.

The Supreme Court's decision in *Cottage Savings Association v. Commissioner* provides further support that the economic substance doctrine is a canon of statutory construction that applies only when the statute to be interpreted requires economic substance. 499 U.S. 554 (1991). The Court considered whether an exchange of interests in a certain group of loans for an interest in a different group of legally different but economically-equivalent loans was a "sale or other disposition" for purposes of determining whether a loss was realized in a particular tax year. The only purpose for the exchange was to trigger a tax loss. The IRS argued that the exchange was a "disposition" only if the properties exchanged were "materially different." The Court agreed that there was a "material difference" requirement under a regulation promulgated by the Treasury Department; however, the Court concluded that "what constitutes a 'material difference' for purposes of § 1001(a) of the [Internal Revenue] Code is a more complicated question." 499 U.S. at 562 .

The IRS argued in *Cottage Savings* that "material difference" contemplated an economic substance analysis. 499 U.S. at 562 ("The Commissioner argues that properties are 'materially different' only if they differ in economic substance."). The Court rejected that argument. In doing so, the Court looked to the pre-enactment caselaw from which the "material difference" standard was derived and that the Court "believe[d] Congress intended to codify in enacting and reenacting the language that now comprises § 1001(a)." 499 U.S. at 563. In other words, the Court looked to Congress's intent to determine whether an economic substance analysis was required to interpret the statute.

When read together, these cases establish that the law before enactment of section 7701(*o*) was that the economic substance doctrine is relevant to the interpretation of a particular provision of the Internal Revenue Code only when the language of such provision incorporates an economic substance concept, either implicitly or explicitly. Through enactment of section 7701(*o*)(5)(C), Congress requires relevance to be determined in accordance with these cases.

Accordingly, *amicus* respectfully requests that the Court hold that the economic substance doctrine is a canon of statutory interpretation that is "relevant" only when the language of the Internal Revenue Code provision to be interpreted incorporates an economic substance concept.

**B.     The Economic Substance Doctrine Is *Per Se* Not Relevant to Transactions Where the Choice Between Meaningful Economic Alternatives Is Based on Comparative Tax Advantages or to Transactions Undertaken to Take Advantage of Specific Tax Incentives Provided by Congress.**

Because the economic substance doctrine is relevant only when the provision to be interpreted incorporates an economic substance concept, we can derive two clear instances in which the economic substance doctrine will not be relevant: first, to basic business transactions where the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages and second, to transactions undertaken to take advantage of specific tax incentives provided by Congress.

The House Report provides a clear articulation of the applicable standard.  It says that section 7701(*o*)  "is not intended to alter the tax treatment of certain basic business transactions that [should be] … respected … because the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages."  House Report at 296; *see also* JCT Technical Explanation at 152. There are numerous such examples.  Among those referenced in the JCT Technical Explanation are:

- The choice between capitalizing a business enterprise with debt or equity;

- A U.S. person's choice between utilizing a foreign corporation or a domestic corporation to make a foreign investment; and

- The choice to enter into a transaction or a series of transactions that constitute a corporate reorganization under subchapter C of the Internal Revenue Code.

*See* JCT Technical Explanation at 152. Other examples of "basic business transactions" where the "choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages" include so-called "check-the-box elections" pursuant to which taxpayers select an entity's status for tax purposes (26 C.F.R. § 301.7701-1) and timing a transaction to recognize gain or loss at a time when it is most tax advantageous. The common element of these transactions that makes an economic substance analysis irrelevant is that the Internal Revenue Code provisions triggered by these transactions do not contain an economic substance requirement because the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages.

The second category of transactions to which the economic substance doctrine is *de facto* irrelevant are transactions undertaken to take advantage of tax incentive provisions enacted by Congress. Congress uses the Internal Revenue Code for multiple purposes. "[T]he present federal income tax is replete with tax incentive provisions. Some were adopted to assist particular industries, business activities, or

financial transactions. Others were adopted to encourage nonbusiness activities considered socially useful, such as contributions to charity." Stanley S. Surrey, *Tax Incentives as a Device for Implementing Government Policy: A Comparison with Direct Government Expenditures*, 83 HARV. L. REV. 705, 705 (1970).[5]

In many instances the text or purpose of the statutory provision at issue affirmatively suggests that Congress intended for taxpayers to receive certain tax benefits without regard to economic substance. One obvious example is tax credits based on the production of certain forms of renewable energy (26 U.S.C. § 45). *See also* 26 U.S.C. § 48 (providing a tax credit for investing in certain renewable energy facilities). These are credits Congress provides to taxpayers to incentivize investment in clean energy. Capital-intensive projects necessary to increase availability of clean energy supplies may not be economical without the benefit of these tax credits. Similarly, Congress uses other provisions to spur investment in other desired activities. *See also, e.g.*, 26 U.S.C. §§ 42 (low-income housing

---

[5] *See also, e.g.*, *Historic Boardwalk Hall, LLC v. Comm'r*, 694 F.3d 425, 432 (3d Cir. 2012) ("In sum [26 U.S.C. § 47] was a deliberate decision to skew the neutrality of the tax system to encourage taxable entities to invest, both in form and substance, in historic rehabilitation projects"); Investing in Qualified Opportunity Funds, 84 Fed. Reg. 18,652, 18,652 (May 1, 2019) ("Sections 1400Z-1 and 1400Z-2 seek to encourage economic growth and investment in designated distressed communities (qualified opportunity zones) by providing Federal income tax benefits to taxpayers who invest new capital in businesses located within qualified opportunity zones through a QOF.").

credits), 45D (new markets tax credit), 45Q (carbon capture credit); 45V (hydrogen production credit); 45Z (clean fuel production credit); 47 (rehabilitation credit). Application of the economic substance doctrine to such transactions would clearly subvert congressional intent to provide these tax benefits regardless of pretax economic considerations.

Nothing makes this point more clearly than 26 U.S.C. § 6418. That provision allows one taxpayer to purchase certain specified "green energy" tax credits from another taxpayer. Such a transaction, by definition, has no nontax business purpose or nontax economic consequence to the purchaser. Under the district court's ruling, the purchase would be subjected to, and fail, the two-pronged test for economic substance set out in section 7701($o$), and the clear intent of Congress would be thwarted.

Accordingly, *amicus* respectfully urges the Court to conclude that the economic substance doctrine is not relevant to either basic business transactions where the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages or transactions undertaken to take advantage of specific tax incentives provided by Congress.

## CONCLUSION

*Amicus* urges the Court to reverse the decision of the district court and hold that (1) section 7701(*o*) requires a determination that the economic substance doctrine is relevant before application of the two-factor test and (2) the economic substance doctrine is a canon of statutory interpretation that is relevant to the interpretation of provisions of the Internal Revenue Code only when the language of the particular provision incorporates an economic substance concept, either implicitly or explicitly. As such, the economic substance doctrine is not relevant to either basic business transactions where the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages or transactions undertaken to take advantage of specific tax incentives provided by Congress.

Dated: May 7, 2024

Respectfully submitted,

*/s/ Kathleen Pakenham*
Kathleen Pakenham, Esq.
VINSON & ELKINS LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 237-0149 (tel.)
kpakenham@velaw.com

*Counsel for Amicus Curiae*

## <u>CERTIFICATE OF COUNSEL REGARDING AUTHORITY TO FILE</u>

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amicus* states that all parties have consented to the filing of this brief.

Dated: May 7, 2024

Respectfully submitted,

*/s/ Kathleen Pakenham*
Kathleen Pakenham, Esq.
VINSON & ELKINS LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 237-0149 (tel.)
kpakenham@velaw.com

*Counsel for Amicus Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rules 32(a)(7)(B) and 29(a)(5) of the Federal Rules of Appellate Procedure because it contains 5,888 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

Dated: May 7, 2024

Respectfully submitted,

*/s/ Kathleen Pakenham*
Kathleen Pakenham, Esq.
VINSON & ELKINS LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 237-0149 (tel.)
kpakenham@velaw.com

*Counsel for Amicus Curiae*

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, SentinelOne, version 23.2.3.358, last updated May 1, 2024, and according to the program are free of viruses.

Dated: May 7, 2024

Respectfully submitted,

*/s/ Kathleen Pakenham*
Kathleen Pakenham, Esq.
VINSON & ELKINS LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 237-0149 (tel.)
kpakenham@velaw.com

*Counsel for Amicus Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 7, 2024

Respectfully submitted,

*/s/ Kathleen Pakenham*
Kathleen Pakenham, Esq.
VINSON & ELKINS LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 237-0149 (tel.)
kpakenham@velaw.com

*Counsel for Amicus Curiae*
